### UNITED STATES DISTRICT COURT
#### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **SUNDAY DASKALEA**, *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 03-2074 (JGP)** |
| | ) | |
| **THE WASHINGTON HUMANE** | ) | |
| **SOCIETY**, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Plaintiffs are pet owners whose pets were temporarily seized by the Washington Humane Society when it determined the animals were neglected within the meaning of the District of Columbia's animal cruelty statute.  *See* D.C. Code § 22-1001.  They bring this putative class action on behalf of all similarly situated pet owners who have had an animal seized by the Washington Humane Society, alleging that the Freedom From Cruelty to Animal Protection Act of 2000, June 8, 2001, D.C. Law § 13-303, § 2, 47 DCR 7307 (codified at D.C. Code § 22-1001 *et seq.*), is unconstitutional, as written and customarily enforced, because it fails to provide due process of law, is unconstitutionally vague, and is arbitrarily and capriciously enforced.  They also allege a number of District of Columbia common law tort claims against the Washington Humane Society, its employees, and the District of Columbia.

This matter comes before the Court on the **Humane Society Defendants'**[1] **Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted** [16], a **Motion to**

---

[1]   The "Humane Society Defendants" refers to the Washington Humane Society, Rosemary Vozobule, Adam Parascandola, Jody Huckaby, and Lindsay Gardewin.

**Dismiss** [17] filed by Defendants Sonya Scnoor and H.O. Boozer,[2] and the **District of Columbia's Motion to Dismiss Or, In The Alternative, For Summary Judgement** [18].[3] Upon consideration of the parties' motions and related filings, and for the reasons explained below, the motions are granted in part and denied in part.

## BACKGROUND

Plaintiffs' amended complaint alleges the following facts.[4]  On May 17, 2002, Plaintiff Sunday Daskalea left her dog unattended in her vehicle while "she went up to her apartment to get some things."  First Am. Compl. at ¶¶ 31, 33.  The dog, "a full-bred, pedigreed 'Dogo Argentino,'" which she had purchased "for breeding, as well as companionship" purposes, "had just been walked, watered and fed, and was in absolutely no danger."  *Id*. at ¶ 31.  It is not clear from the amended complaint how long the animal was left unattended; however, while Ms. Daskalea was in her apartment, Defendant Sonya Scnoor, a Humane Society law enforcement officer, seized the dog from the car.  *Id*. at ¶ 36.  Ms. Daskalea's "[r]epeated efforts . . . to retrieve [her dog] from the Washington Humane Society were unsuccessful," as the Humane Society "refused to return" the animal.  *Id.* at ¶ 39.  While in custody of the Humane Society, the dog was "forcibly sterilized . . . against the will of [Ms. Daskalea]."  *Id*. at ¶ 41.  Ms. Daskalea was never given an opportunity to contest the "seizure, detention, sterilization [or] return of her

---

[2]  Defendants Scnoor and Boozer incorporate by reference the arguments raised by the Humane Society Defendants.

[3]  Plaintiffs responded to all three dispositive motions in their Consolidated Memorandum in Opposition to Defendants' Motions to Dismiss & for Summary Judgement (Plts.' Opp'n.). The Court will therefore address all three of Defendants' motions in this memorandum opinion.

[4]  Unless otherwise indicated, all facts are taken from the amended complaint or the undisputed facts presented in the parties' briefs.

pet." *Id*. at ¶ 42.  Although the animal was eventually returned to Ms. Daskalea, it was

"permanently prevented from breeding" and its "personality ha[d] changed." *Id*. at  ¶¶ 43, 45.

On July 19, 2002, Plaintiff Frances Norris left her dog unattended in her car while she

"went to [a] nearby sports club." *Id*. at ¶ 46.  Dr. Norris "parked her car under a large shade

tree . . . cracked all four car windows, [and] left food and water for [the animal]." *Id*.  Upon

returning to her car, "Dr. Norris found that officer H.O. Boozer . . . of the Humane Society had

entered her car and seized [her dog] without her permission, knowledge or consent." *Id*. at ¶ 48.

Dr. Norris maintains that her dog "was perfectly fine and in absolutely no danger" at the time of

the seizure.  Much like Ms. Daskalea, Dr. Norris "was denied the right to notice and hearing to

contest the seizure, detention, [and] terms of release" of her pet, and her "[e]fforts . . . to retrieve

[her dog] from the Washington Humane Society were [initially] unsuccessful." *Id*. at ¶ 54.  The

Humane Society eventually "agreed to return [the dog], but only if Dr. Norris agreed to pay . . .

[for] unnecessary medical treatment." *Id*. at ¶ 55.  Dr. Norris "reluctantly agreed" to the

treatment, realizing it was the "only way" the Humane Society would return her pet. *Id*.  The dog

"was in terrible condition" when released.  *Id*. at ¶ 56.

Much like Ms. Daskalea and Dr. Norris, Plaintiff Willie Jackson also had his dog seized

by the Humane Society.  Mr. Jackson alleges that on October 11, 2003, members of the Humane

Society "entered [his] family['s] home and illegally seized [his dog]," which had "developed

terminal cancer." *Id*. at ¶¶ 59, 61.  "[D]espite numerous demands" to free the animal,  the

Humane Society "refused to return [his dog]" until Mr. Jackson would "consent to, and pay

for . . . major cancer surgery." *Id*. at ¶¶ 61, 64.  In an attempt to appease the Humane Society,

Mr. Jackson provided his pet's veterinary records "for the prior four years, [which] document[ed

3

the animal's] exemplary medical treatment." *Id*. at ¶ 61.  The Humane Society was not satisfied,

however, and demanded that the animal undergo "radical treatment."  *Id*. at ¶ 64.  "[U]nder

compulsion from the Humane Society, Mr. Jackson was compelled to agree to the cancer

surgery." *Id*. at ¶ 65.  The treatment was unsuccessful and the animal died.  *Id*. at ¶ 64.  At no

time during this process was Mr. Jackson given an opportunity to contest the seizure and terms of

release of his pet, including the reasonableness of the cancer treatment.[5]  *Id*. at ¶ 70.

## LEGAL STANDARDS

This matter comes before the Court on Defendants' motions to dismiss under Rule

12(b)(6) for "failure to state claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

"When adjudicating a motion to dismiss for failure to state a claim under Federal Rule of Civil

Procedure 12(b)(6), the Court must view all the allegations and facts in the complaint in the light

most favorable to the plaintiffs, and it must grant the plaintiffs the benefit of all inferences that

can be derived from those facts." *Lindsey v. United States*, 448 F. Supp. 2d 37, 44 (D.D.C. 2006)

 (citing *Barr. v. Clinton*, 361 U.S. App. D.C. 472, 475, 370 F.3d 1196, 1199 (D.C. Cir. 2004)).

"However, the court need not accept inferences drawn by plaintiffs if such inferences are

unsupported by the facts set out in the complaint.  Nor must the court accept legal conclusions

cast in the form of factual allegations." *Kowal v. MCI Commc'n Corp.*, 305 U.S. App. D.C. 60,

65, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct.

2932, 2944 (1986)).  "The court is limited to considering facts alleged in the complaint, any

---

[5]  Plaintiffs were all given, at the time their animals were seized, an "Official
Notification" form, informing them of the possible criminal penalties that could be imposed for
committing animal cruelty.  First Am. Compl. at ¶¶ 118-30.

documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record." *Johnson v. Long Beach Mortg. Loan Trust 2001-4*, 451 F. Supp. 2d 16, 27 (D.D.C. 2006) (citing *EEOC v. St. Francis Xavier Parochial Sch.*, 326 U.S. App. D.C. 67, 70, 117 F.3d 621, 624 (D.C. Cir. 1997)) (other citation omitted). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957) (footnote omitted). "The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests." *Runkle v. Gonzales*, 391 F. Supp. 2d 210, 220 (D.D.C. 2005) (citations omitted).

Because the District of Columbia has moved to dismiss the amended complaint or, in the alternative, for summary judgment, the Court is mindful of Federal Rule of Civil Procedure 56. *See* Fed. R. Civ. P. 12(b) ("If . . . matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."). The Court will grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Rule 56 also mandates summary judgment if a party fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. In such a situation, there is no genuine issue of material fact since there is a failure of proof

concerning an essential element of the non-moving party's case that renders all other facts immaterial." *Hazward v. Runyon*, 14 F. Supp. 2d 120, 122 (D.D.C. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986)).

"When ruling on a motion for summary judgment, this Court must view the evidence in the light most favorable to the nonmoving party." *Am. Cargo Transp. v. Natsios*, 429 F. Supp. 2d 139, 145 (D.D.C. 2006) (citing *Bayer v. United States Dep't of Treasury*, 294 U.S. App. D.C. 44, 47, 956 F.2d 330, 333 (D.C. Cir. 1992)). "The court must accept evidence provided by nonmovants as true, and all justifiable inferences are to be drawn in their favor." *Hazward*, 14 F. Supp. 2d at 122 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2510 (1986)). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; 106 S. Ct. at 2511. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." 477 U.S. at 249; 106 S. Ct. at 2510 (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288-89, 88 S. Ct. 1575, 1592 (1968)).[6]

## DISCUSSION

---

[6] "The burden is on the movant to make the initial showing of the absence of any genuine issues of material fact." *Ehrman v. United States*, 429 F. Supp. 2d 61, 66 (D.D.C. 2006) (citing *Celotex Corp.*, 477 U.S. at 323; 106 S. Ct. at 2553) (other citation omitted). "If the moving party meets its burden, the burden then shifts to the non-moving party to establish that a genuine issue as to any material fact actually exists." *Nelson v. Kemper*, 2006 U.S. Dist. LEXIS 61646, *4-6 (D.D.C. 2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356 (1986)). Pursuant to "Rule 56(f) 'the court may refuse the application for judgment' as premature if based on 'the affidavits of a party opposing the motion [it is shown] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition . . . .'" *Hudert v. Alion Sci. & Tech. Corp.*, 429 F. Supp. 2d 99, 109 (D.D.C. 2006) (citing Fed. R. Civ. P. 56(f)) (alterations in original).

Plaintiffs filed suit against the District of Columbia,[7] the Washington Humane Society, and various Humane Society employees, including John Does 1-10, individually and in their capacity as agents of the Humane Society, alleging an assortment of constitutional and common law violations in connection with the District of Columbia's animal cruelty statute, D.C. Code § 22-1001 *et seq.  See* First Am. Compl. ¶¶ at 1, 6-17.  Plaintiffs claim "that the Freedom From Cruelty to Animal Protection Act of 2000 is unconstitutional for its failure to provide due process rights to pet owners" because the "statutory language of the Act does not provide for notice and a hearing . . . to contest the seizure, detention, and terms of release" of animals seized.  *Id*. at ¶¶ 19-20.  Plaintiffs "further allege that the Act is unconstitutionally vague, and that the defendants enforcement of the act is arbitrary and capricious," *id*. at ¶2, and "that the due process provided in their individual cases was inadequate, and that the actions of defendants . . . were arbitrary and capricious," *id*. at ¶ 3.  Plaintiffs seek a declaratory judgment that the Freedom From Cruelty to Animal Protection Act of 2000 is unconstitutional, an injunction barring Defendants from enforcing it, and damages.  *Id.* at ¶ 4.  In their respective motions, Defendants seek dismissal of each count contained in the amended complaint.  The Court will examine Defendants' arguments in turn.

**A.      The Washington Humane Society is Not a Suable Entity.**

As a preliminary matter, before turning to Defendants' specific arguments pertaining to the eight counts in the amended complaint, the Court will address the principle, and potentially decisive, argument raised by the Humane Society that it is "not a suable entity."  Wash. Humane Soc. Mot. To Dismiss at 2.  Specifically, the Humane Society asserts that "the Complaint should

---

[7]  Plaintiffs' original complaint did not name the District of Columbia as a defendant.

be dismissed in its entirety as it relates to the Humane Society" because as an "entity formed by Congress" it "may not be sued unless Congress [] authorizes [it] explicitly" or, in some circumstances, "impliedly[,] if the entity derived its existence from a suable entity." *Id.* at 6. Because its Congressional charter "does not [explicitly] provide that it can be sued," the Humane Society reasons that it is "immune from suit." *Id.* (citing *Ardon v. Washington Humane Soc.*, 1997 WL 527336, *1 (D.D.C. 1997)).  The Court agrees that the Washington Humane Society is *non sui juris*.

In *Blackmar v. Guerre*, the Supreme Court held that the United States Civil Service Commission was not a suable entity because it was "not a corporate entity which Congress ha[d] authorized to be sued." *Blackmar v. Guerre*, 342 U.S. 512, 514, 72 S. Ct. 410, 411 (1952).  The Court reasoned that "[w]hen Congress authorizes one of its agencies to be sued *eo nomine*, it does so in explicit language, or impliedly because the agency is the offspring of such a suable entity." 342 U.S. at 515; 72 S. Ct. at 412 (citing *Keifer & Keifer v. Reconstruction Fin. Corp.*, 306 U.S. 381, 390, 59 S. Ct. 516, 519 (1939)). Since *Blackmar*, courts in this jurisdiction have routinely "applied this reasoning to agencies of the District of Columbia established by Congress." *Thompson v. District of Columbia*, 1980 U.S. Dist. LEXIS 11452, *5 (D.D.C. 1980) (citing *Braxton v. Nat'l Capital Hous. Auth.*, 396 A.2d 215 (D.C. 1978)).  *See Kundrat v. District of Columbia*, 106 F. Supp. 2d 1, 5 (D.D.C. 2000) (listing various District of Columbia agencies, including the Office of Inspector General, Department of Health, Department of Administrative Services, Department of Human Services, Department of Corrections, Fire Department, Office of Personnel, Office of Human Rights, and Department of Sanitation, among others, that are *non sui juris*).  *See also* 3 MCQILLIAN MUN. CORP. § 12.40 (3rd Ed. 1990) ("In the discharge of a duty

primarily resting upon the municipality, generally the rule is that a department acts as its agent although the department may have full power in the particular matter involved.  However, the department may be made responsible as a corporation, and not the city, where *the charter or a legislative act may so provide*.") (citations omitted) (emphasis added).  Indeed, "the overwhelming weight of precedent in this Circuit . . . holds that 'in the absence of explicit statutory authorization, bodies within the District of Columbia government are not suable as separate entities.'"  *Kundrat*, 106 F. Supp. 2d at 7 (quoting *Milliner v. District of Columbia*, 1993 WL 837384, *1 (D.D.C. 1993)) (other citation omitted).[8]  "This means that a Congressionally created entity is not suable *eo nomine* unless Congress has constituted it as a corporate entity *and*, in addition, authorized it to sue and be sued."  *Id*. at 6 n.9.

Congress created the Washington Humane Society in 1870.  *See* Act of June 21, 1870, ch. 135, 16 Stat. 158, § 1 (codified at D.C. Code § 44-1501 *et seq*. (2001)).  Under the terms of the Congressional charter, the Humane Society  was a "body corporate . . . to be known as the Association for Prevention of Cruelty to Animals," which was intended to prevent cruelty to animals.  *Id*.  Notably absent from the Congressional charter, however, is an explicit authorization that the Washington Humane Society is a suable entity.  There is no indication in the enabling statute, or any later amendments, that Congress intended the Washington Humane Society to be *sui juris*.  "When Congress [intends] to authorize a federally created entity to sue

---

[8] While the weight of authority in this jurisdiction is consistent with *Blackmar*, there is some support for the notion that an entity may be *sui juris* if it "is a corporation, or quasi corporation, with functions peculiar to such bodies which are performed separately from the functions of the municipality . . . ."  3 McQILLIAN MUN. CORP. at § 12.40.  *See also Ray v. District of Columbia*, 535 A.2d 868, 870 (D.C. 1987).  As noted in *Kundrat*, it does not appear that the U.S. Court of Appeals for the D.C. Circuit has "addressed this exact issue."  106 F. Supp. 2d at 4.

and be sued in its own name, it knows how to so and does so explicitly." *Kundrat*, 106 F. Supp.

2d at 7.  Congress has not done so here.  Moreover, Plaintiffs have not alleged, and the Court can

not infer from the factual record, that the Humane Society "is the offspring of [] a suable entity."

*Blackmar*, 342 U.S. at 515, 72 S. Ct. at 411.  Because "Congress did not authorize [the

Washington Humane Society] to be sued by explicit language or by implication . . . the Court

concludes that the [Humane Society] is not a suable entity."  *Thompson*, 1980 U.S. Dist. LEXIS

11452 at *6.

The Court's conclusion is supported by *Ardon v. Washington Humane Soc.*, 1997 U.S.

Dist. LEXIS 12612 (D.D.C. 1997).  In *Ardon*, a *pro se* plaintiff sued the Washington Humane

Society, alleging "that an employee of the Humane Society wrongly confiscated certain religious

articles from his home."  *Id*. at *1.  The court dismissed plaintiff's complaint, concluding, *inter*

*alia*, that the Washington Humane Society was not a suable entity.  *Id*. at *4.  In reaching this

decision, the *Ardon* court noted that the "Humane Society is a District of Columbia corporate

body created by Congress," that an "entity formed by Congress may not be sued unless Congress

so authorizes explicitly, " and that its "statutory provisions do not provide [that it can] sue or be

sued."  *Id*. at *3-4 (citations omitted).  For these reasons, the Humane Society was *non sui juris*.[9]

Although Plaintiffs do not directly challenge the substance of the *Ardon* decision, they do

point to another case in which the Washington Humane Society was captioned in the litigation,

*see Nathaniel Dugar, Pastor v. Washington Humane Soc., et al.*, No. 95-0173 (D.D.C. March 12,

1997) (order denying motion to dismiss), for the proposition that "at least one judge of this Court

---

[9]   The *Ardon* Court later denied the plaintiff's motion for reconsideration, reiterating that
the Washington Humane Society is not a suable entity.  *See Ardon v. Washington Humane Soc.*,
No. 96-1902 (D.D.C. Aug. 18, 1997) (memorandum order denying motion for reconsideration).

has . . . held that the Washington Humane Society and its officers can be sued for monetary

damages." Plts.' Opp'n. at 12.  A review of the *Dugar* case does not support this proposition.

While it is true that the Washington Humane Society was a named defendant in the action, it

does not appear that the *Dugar* Court actually considered the precise question at issue here, *i.e.*,

whether the Humane Society is *sui juris*.  The interim order cited by Plaintiffs in their opposition

brief addresses a separate legal question; that is, whether the Executive Director of the

Washington Humane Society "was entitled to qualified immunity from suit" "in her individual

capacity for the constitutional violations alleged in the complaint."  *Id*. at 1-2.  The court did not

consider (and it appears the issue was not raised) whether the Humane Society was a suable

entity.  The *Dugar* order cited by Plaintiffs is therefore of little precedential value here, especially

in light of the express reasoning contained in *Ardon*, *supra*.[10]

Finally, Plaintiffs argue that whether "the Washington Humane Society is a department or

other body within [the District of Columbia]" is "a material issue of fact precluding dismissal or

summary judgement."  Plts.' Opp'n. at 13.  They claim that "[f]urther discovery is necessary to

explore the relationship between [the District of Columbia and the Washington Humane

Society]."  *Id*.  Plaintiffs' contention is misplaced.  Whether an entity like the Humane Society is

amenable to suit does not turn on whether it falls under the umbrella of the District of Columbia

government.  While many entities held to be *non sui juris* are in fact departments within the

District of Columbia, such as the Department of Sanitation and the Department of Corrections

for example, *see Kundrat*, *supra*, 106 F. Supp. 2d at 5, this is not dispositive of the issue.  The

---

[10]  The parties in *Dugar* ultimately reached a negotiated settlement.  *Dugar*, No. 95-0173
(D.D.C. Sept. 9, 1997) (consent judgment in favor of plaintiffs).

deciding question is whether Congress authorized suit, for "[a]n entity formed by Congress may not be sued unless Congress so authorizes explicitly." *Braxton*, 396 A.2d at 216.  Here, the plain language of the Washington Humane Society's enabling statute shows that Congress did not authorize it to be sued.  *See* Act of June 21, 1870, ch. 135, 16 Stat. 158, § 1.  Accordingly, the Court will grant the motion to dismiss the amended complaint, as it pertains to the Washington Humane Society, because the Humane Society is *non sui juris*.

### B.       Counts I & III: Violation of Due Process

In Count I of the amended complaint, Plaintiffs allege that Defendants' conduct violated their Fourth, Fifth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.  *See* First Am. Compl. at ¶¶ 71-74.  They "allege that the defendants are state actors, acting under color of law, [who] have adversely deprived plaintiffs of their personal and property rights by illegally seizing their pets, illegally detaining them, by forcibly sterilizing pets, extorting unjustified fees and expenses from owners, [and] compelling unwanted medical treatment. . . ."  *Id*. at ¶ 71.  Similarly, in Count III, Plaintiffs allege that they were deprived of "property without due process of law" in "their individualized cases," "regardless of the unconstitutionality of the Freedom From Cruelty to Animal Protection [Act] as written."  *Id*. at ¶¶ 79-80.

### 1. The Washington Humane Society and its Employees are State Actors.

The Washington Humane Society Defendants urge the Court to dismiss Counts I and III as "legally insufficient because the Humane Society Defendants are not state actors and thus could not have applied the Anti-Cruelty Amendments unconstitutionally."  Wash. Humane Soc. Mot. To Dismiss at 13-15.  Defendants Scnoor and Boozer echo this argument, asserting that Humane Society employees were not acting "under color of law" for purposes of 42 U.S.C. §

1983.[11]  *See* Scnoor Mot. To Dismiss at 3-4.

"'To state a claim for relief under § 1983, a plaintiff must allege both a violation of a right secured by the Constitution or by federal law, and that the alleged deprivation was committed by a person acting under color of state law.'"  *Gabriel v. Corrections Corp. of America*, 211 F. Supp. 2d 132, 137 (D.D.C. 2002) (quoting *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 408 (2d Cir. 1990)).  *See also Settles v. United States Parole Comm'n*, 368 U.S. App. D.C. 297, 302, 429 F.3d 1098, 1103 (D.C. Cir. 2005) ("To recover under § 1983, the plaintiff must show that the defendant was acting 'under color' of state law.").  Notably, Defendants do not challenge Plaintiffs' claim that they have a federally protected right in their animals; instead, they challenge whether the Washington Humane Society and its employees were acting under color of state law.

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  *Williams v. United States*, 364

---

[11]  Defendants Scnoor and Boozer asserted in their motion to dismiss, in a single sentence, that they "cannot be individually liable for a constitutional violation" because they "were mere employees of the Humane Society."  Scnoor Mot. To Dismiss at 4.  They provided no support for this claim.  It was not until their reply brief was filed that they argued that they are "entitled to qualified immunity" if "the Washington Humane Society is deemed to be a governmental agency."  Scnoor Reply Br. at 3.   "Since Defendants raised this issue for the first time in their Reply brief, the Court cannot properly consider the argument at this time."  *Jenkins v. Rucker*, 2005 U.S. Dist. LEXIS 2971, *7 (D.D.C. 2005) (citing *Kappus v. Comm'r of Internal Revenue*, 358 U.S. App. D.C. 11, 16, 337 F.3d 1053, 1058 n.4 (D.C. Cir. 2003)) (other citation omitted).  "Considering an argument advanced for the first time in a reply brief . . . is not only unfair to [Plaintiffs], but also entails the risk of an improvident or ill-advised opinion on the legal issues tendered."  *McBride v. Merrell Dow & Pharmaceuticals*, 255 U.S. App. D.C. 183, 186, 800 F.2d 1208, 1211 (D.C. Cir. 1986) (citations omitted).

U.S. App. D.C. 382, 384, 396 F.3d 412, 414 (D.C. Cir. 2005) (citing *West v. Atkins*, 487 U.S. 42,

49, 108 S. Ct. 2250, 2255 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S. Ct.

1031, 1043 (1941)) (internal quotation marks omitted).[12]  This is a fact-intensive inquiry, and

there exists, as a result, "[n]o succinct summary [] of what constitutes state action for purposes of

applying constitutional safeguards." *Kolinske v. Lubbers*, 229 U.S. App. D.C. 157, 163, 712

F.2d 471, 477 (D.C. Cir. 1983).  As a general rule, however, "state action 'may be found if,

though only if, there is such a close nexus between the State and the challenged action that

seemingly private behavior may be fairly treated as that of the State itself.'"  *Williams*, 364 U.S.

App. D.C. at 384, 396 F.3d at 414 (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic

Ass'n*, 531 U.S. 288, 295, 121 S. Ct. 924, 930 (2001)).  "'[A] challenged activity may be state

action when it results from the State's exercise of coercive power, when the State provides

significant encouragement, either overt or covert, or when a private actor operates as a willful

participant in joint activity with the State or its agents." *Id.* (quoting *Brentwood Acad.*, 531 U.S.

at 296, 121 S. Ct. at 930).  *See also Kolinske*, 229 U.S. App. D.C. at 163, 712 F.2d at 477 ("[T]he

conduct of a private party has been attributed to the state because the private party performed

what was traditionally an exclusive public function; the private party acted in concert with the

state; the private conduct was compelled by state law; or because there is some other nexus

between the private party and the state such that the conduct should be attributed to the state.")

(citations omitted).  "The ultimate issue in determining whether a person is subject to suit under

---

[12]  The Court of Appeals has noted that "the under-color-of-state-law doctrine may cast a somewhat wider net than [] the state-action requirement [of the Fourteenth Amendment]," and that "[t]he Supreme Court has provided no definitive word on this issue." *Williams*, 364 U.S. App. D.C. at 385, 396 F.3d at 415.

§ 1983 is . . . [whether] the alleged infringement of federal rights [is] 'fairly attributable to the State?'" *Rendell-Baker v. Kohn*, 457 U.S. 830, 838, 102 S. Ct. 2764, 2770 (1982) (quoting *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937, 102 S. Ct. 2744, 2753 (1982)).

The crux of Defendants' argument is that the Washington Humane Society was not acting under color of state law because it was not performing "functions that have been traditionally the exclusive prerogative of the State." Wash. Humane Soc. Mot. To Dismiss at 14 (citations and internal quotation marks omitted). Defendants point out that "the Humane Society has worked to prevent animal cruelty in the District of Columbia" throughout "its 130 year history," and that it has always, during this time, had the implicit power to seize animals suffering abuse. *Id*. They note that the Animal Protection Act merely "codified" this longstanding practice. *Id*. at 14-15. Because the Humane Society did not acquire any new authority beyond what it had exercised for the previous 130 years, Defendants assert that it cannot be a state actor.[13] *Id*. at 15. This argument misses the critical question before the Court. While it may be true that the Humane Society's mission has not changed for the past 130 years, this argument does not address the precise issue – whether "the alleged infringement of federal rights [is] 'fairly attributable to the State?'" *Kohn*, 457 U.S. at 838, 102 S. Ct. at 2770.

An examination of the explicit powers and functions bestowed by the Government upon the Washington Humane Society demonstrates that the Humane Society must be considered a government actor. *See San Francisco Arts & Ath. v. United States Olympic Comm.*, 483 U.S.

---

[13] Defendants Scnoor and Boozer claim that "Plaintiffs have failed to allege any facts in support of the contention that Defendants Scnoor and Boozer were state actors who deprived the Plaintiffs of due process." This claim is refuted by paragraphs 25-30, 36 and 48 of the amended complaint.

522, 548, 107 S. Ct. 2971, 2987 (1987) (Brennan, J., dissenting).  As Plaintiffs allege in the

amended complaint, the "Washington Humane Society, and the individually named agents and

officers thereof, perform traditional, core, police, prosecutorial, and judicial functions."  First

Am. Compl. at ¶ 29.  This includes the specific statutory authority to "prosecute all violations of

the [District's] animal cruelty laws," *id*. at ¶ 29(a) (citing D.C. Code § 22-1006), "to appear

before magistrates to swear out warrants for the searches of private homes,"  *id*. at ¶ 29(b) (citing

D.C. Code § 22-1005), and to collect "fines and forfeitures imposed by judges of the Superior

Court,"  *id*. at ¶ 29(c) (citing D.C. Code § 22-1006).  These statutory grants of power are in

addition to the Humane Society's authority to seize "any animal to protect it from neglect or

cruelty."  D.C. Code § 22-1004(b)(1) (2003 Suppl.).  The Court therefore agrees with Plaintiffs

that the Humane Society performs "traditional, government functions, which constitute 'state

action.'"  Plts.' Opp'n. at 15.  As "[t]he [Supreme] Court has repeatedly held . . . 'when private

individuals or groups are endowed by the State with powers or functions governmental in nature,

they become agencies or instrumentalities of the State and subject to its constitutional

limitations.'"  *San Francisco Arts & Ath.*, 483 U.S. at 549, 107 S. Ct. at 2987-88 (quoting *Evans

v. Newton*, 382 U.S. 296, 299, 86 S. Ct. 486, 488 (1966)) (other citations omitted).

    The notion that a local humane society performs a traditional, governmental function –

law enforcement – has been recognized in other jurisdictions.   For example, in *Brunette v.

Humane Society of Ventura County*, the Ninth Circuit recognized that the "Humane Society and

its officers are state actors for the purposes of § 1983."  294 F.3d 1205, 1208 (9th Cir. 2002).  In

reaching this conclusion, that court noted that the "Humane Society was created by special

California statute, and [that] it engages in a quasi-public function."  *Id*. at 1208.  Much like the

16

Washington Humane Society employees here, the humane society employees in *Brunette* were "invested with authority to investigate reports of animal cruelty, impound animals, place liens on property, and bring criminal charges against citizens." *Id. See also Tennessee v. Adkisson*, 2001 Tenn. Crim. App. LEXIS 832, *8-15 (Tenn. Crim. App. 2001) (concluding humane society officers searching private property qualify as "'state actors' . . . subject to constitutional limitations"); *Studer v. Seneca County Humane Soc'y*, 2000 Ohio App. LEXIS 1974, *8-9 (Ohio Ct. App. 2000) (concluding the "primary purpose" of local humane societies "is law enforcement, an activity traditionally reserved for the government"); *Putnam County Humane Soc'y, Inc. v. Woodward*, 740 So. 2d 1238, 1240 (Fla. Dist. Ct. App. 1999) (holding Public Records Act was applicable to humane society "as an agent of the state" because "the Society ha[d] used its statutory authority to investigate acts of animal abuse and . . . to seize animals").[14]

The District of Columbia has given the Humane Society the authority to prosecute violations of its animal cruelty law, *see* D.C. Code § 22-1006, obtain warrants, *see* D.C. Code § 22-1005, search private residences, *see id.*, seize personal property, *see* D.C. Code § 22-1004, and collect fines, *see* D.C. Code § 44-1506.[15]  This type of conduct is akin to a State's law enforcement power, which "'may be fairly treated as that of the State itself.'"  *Williams*, 364 U.S.

_____

[14]  The Court is not convinced that *Ardon*, *supra*, No. 96-1902 (D.D.C. June  6, 1997) (memorandum order granting motion to dismiss), demands a different result.  In *Ardon*, the court dismissed the complaint because the plaintiff, acting *pro se*, had "failed to allege that the Humane Society [was] a state actor and that therefore the acts taken by the Humane Society constituted state action."  *Id*. at 3.  The *Ardon* court did not have occasion to consider whether the Humane Society was in fact a state actor; it merely concluded that the plaintiff had failed to allege this "pleading requirement."  *Id.*

[15]  The Humane Society has also been given express authority to "extend its operations to the protection of children as well as animals from cruelty and abuse."  D.C. Code § 44-1508 (2001).

17

App. D.C. at 384, 396 F.3d at 414 (quoting *Brentwood Acad.*, *supra*).  For this reason, the Court concludes that the Washington Humane Society performs a distinctive, traditional governmental function and that its employees were acting "under color of state law" for purposes of 42 U.S.C. § 1983.  *See Donnelly v. Zekan*, 2000 Ohio App. LEXIS 2509, *19-20 (Ohio Ct. App. 2000) ("[T]his Court concludes that when the Humane Society and its representatives detained [Plaintiff], searched his home and seized his horses, they were acting under color of law."). Plaintiffs' constitutional claims resting on 42 U.S.C. § 1983, as they relate to the Washington Humane Society Defendants and Defendants Scnoor and Boozer, survive dismissal.

### 2. *Section 1983 Applies to the District of Columbia.*

Although the District of Columbia takes no position on whether the Humane Society and its employees are state actors for purposes of § 1983, it seeks dismissal for a separate reason. Relying on the line of cases interpreting municipal liability under 42 U.S.C. § 1983, *see Monell v. Dept. of Social Svcs.*, 436 U.S. 658, 690, 98 S. Ct. 2018, 2035 (1978), the District of Columbia claims that "Plaintiffs cannot prove that the *District itself* had a policy, custom, or practice of unconstitutionally enforcing the [its] animal cruelty laws."  D.C. Mot. To. Dismiss at 12 (emphasis supplied).  It also asserts that Plaintiffs cannot "prove that the District knew of and disregarded an excessive risk to animal owners" because the Humane Society "act[s] on its own, pursuant to independent statutory authority granted by Congress, with no oversight or control by the District."  *Id*. at 12-13.

Section 1983 "imposes liability on a government that, under color of some official policy, 'causes' an employee to violate another's constitutional rights."  *Monell*, 436 U.S. at 692, 98 S. Ct. at 2036.  "[I]n considering whether a plaintiff has stated a claim for municipal liability, the []

18

court must conduct a two-step inquiry.  First, the court must determine whether the complaint

states a claim for a predicate constitutional violation." *Baker v. District of Columbia*, 356 U.S.

App. D.C. 47, 51, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (citing *Collins v. City of Harker*

*Heights*, 503 U.S. 115, 120, 112 S. Ct. 1061, 1066 (1992).[16]  Second, "the court must determine

whether the complaint states a claim that a custom or policy of the municipality caused the

violation." *Id.* (citing *Collins*, 503 U.S. at 120, 112 S. Ct. at 1066; *Monell*, 436 U.S. at 694, 98 S.

Ct. at 2037).  "Under the second prong, the . . . [Court must] determine[] whether [Plaintiffs'

amended] complaint state[s] a claim that a policy or custom of the District of Columbia caused

the constitutional violation alleged under the first prong." *Id.* (citations omitted).  "The court

must determine whether the plaintiff[s] ha[ve] alleged an 'affirmative link,' such that a municipal

policy was the 'moving force' behind the constitutional violation." *Id.* (quoting *City of*

*Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 105 S. Ct. 2427, 2436 (1985) (op. of Rehnquist, J.);

*City of Canton v. Harris*, 489 U.S. 378, 389, 109 S. Ct. 1197, 1205 (1989)).

 Here, the District of Columbia is essentially challenging whether Plaintiffs have

adequately alleged causation.  Its principal argument seems to be that the District of Columbia

cannot (as a municipality) be held liable for the actions of the Humane Society because the

Humane Society is an independent entity, created by an act of Congress, which is not subject to

oversight or control by the District of Columbia.  The District of Columbia should not "be held

liable . . . for the independent . . . acts of WHS in enforcing local [laws]," it reasons, because

there is no "'municipally established policy' . . . to deprive plaintiffs of their constitutional

---

[16]  As explained more fully *infra*, the amended complaint states a claim for a
constitutional violation of due process.

rights." D.C. Mot. To Dismiss at 12-13.  This argument is misplaced because it ignores the crux of Plaintiffs' claim, that the Animal Protection Act is unconstitutional.

The Court of Appeals has explained that "there are a number of ways in which a 'policy' can be set by a municipality to cause it to be liable under § 1983: the explicit setting of a policy by the government that violates the Constitution; the action of a policy maker within the government; the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become 'custom'; or the failure of the government to respond to a need (for example, training of employees) in such a manner as to show 'deliberate indifference' to the risk that not addressing the need will result in constitutional violations." *Baker*, 356 U.S. App. D.C. at 51, 326 F.3d at 1306 (citations omitted).  For the reasons stated below, the Court has concluded that the amended complaint alleges a viable claim (Count II) that the Animal Protection Act fails to provide constitutional due process.  Because a legislative enactment that is unconstitutional constitutes "the explicit setting of policy," *Baker*, *supra*, Plaintiffs have adequately alleged that the District of Columbia "caused" the constitutional violation.[17]  *See Figueroa-Serrano v. Ramos-Alverio*, 221 F.3d 1, 5 (1st Cir. 2000) ("Enactments by a municipal legislature are official policies.") (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S. Ct. 1292, 1298 (1986)).  The Court is also mindful of the Court of Appeals' instruction that "if a complaint alleging municipal liability under § 1983 may be read in a way that can support a claim for relief, thereby giving the defendant fair notice of the claim, that is

---

[17]  It is not appropriate to dismiss this claim because it was officers of the Washington Humane Society, and not District of Columbia employees, who enforced the Animal Protection Act.  The Humane Society employees were not simply acting under the authority of an otherwise lawful grant of power; rather, they were enforcing a statute that is alleged to be unconstitutional.

sufficient." *Baker*, 356 U.S. App. D.C. at 52, 326 F.3d at 1307 (citations omitted).

A review of the allegations in the amended complaint demonstrates the weakness in the District of Columbia's argument. Plaintiffs' primary contention is "that the Humane Society's enabling statute, the 'Freedom From Cruelty to Animal Protection Act of 2000 . . . is unconstitutional for [its] failure to provide due process to animal owners, including notice and an opportunity to be heard, prior to final action which permanently affects a pets owner's personal and property rights." First Am. Compl. at ¶ 2. Plaintiffs also allege that "it is the custom and policy of the defendants not to provide animal owners with notice and a hearing to contest the seizure, detention, and terms of release for their pets." *Id*. at ¶ 20. Read in its entirety, the amended complaint seems to suggest a sort of cause-and-effect relationship between the District of Columbia and the Humane Society; the District of Columbia has enacted an unconstitutional statute, lacking basic due process protections, which the Humane Society necessarily enforces in a manner lacking basic due process protections. The District of Columbia's argument that it has no "oversight or control" over the Humane Society is therefore contradicted by the amended complaint. Because, according to the amended complaint, the Humane Society enforced the law as enacted by the legislature, it was acting pursuant to a "policy" of the District of Columbia.[18] *See Nichols v. Village of Pelham Manor*, 974 F. Supp. 243, 258 (S.D.N.Y. 1997) ("It is almost self-evident that plaintiff's claim against the [defendant municipality] for his arrest under an unconstitutional statute supports municipal liability under *Monell*.").

---

[18] This does not mean the District of Columbia would be liable for all actions rendered by the Humane Society. Section 1983 does not impose liability on a *respondeat superior* basis. However, in this case, the Humane Society employees were acting pursuant to the authority expressly given to them by the D.C. Council. It would be odd to suggest that a municipality could evade § 1983 by outsourcing enforcement of an unconstitutional law to private parties.

*3.  The Freedom From Cruelty to Animal Protection Act is Not Unconstitutionally
Vague.*

In paragraphs 2 and 21 of the amended complaint, Plaintiffs claim that the Animal

Protection Act is unconstitutional because the term "neglect" is overly vague.  *See* D.C. Code §

22-1004(b).  This claim, which Plaintiffs failed to address in their opposition brief, is foreclosed

by *Tuck v. United States*, 467 A.2d 727 (D.C. 1983).  In *Tuck*, the District of Columbia Court of

Appeals examined the constitutionality of the District of Columbia's animal cruelty law, as it

existed prior to the Animal Protection Act, and held that the law was not unconsitutionally

vague.  467 A.2d at 731-33.  After reviewing statutory definition of "cruelty," the court

"conclude[ed] that the words 'unnecessarily' and 'proper' are not so indefinite as to render

unconsitutionally vague the provision of the cruelty to animals statute, calling for punishment of

anyone who 'unnecessarily fails to provide' an animal in one's custody 'with proper food, drink,

shelter, or protection from the weather.'"  *Id*. (citation omitted).   The *Tuck* court noted that a

statute "is facially vague only if 'no standard of conduct is specified at all,'" and, with respect to

the animal cruelty law, that "[t]o require more precision would be to require the legislature to

draft a detailed code on the care and feeding of animals."  *Id*. at 731, 733 (citing *Coates v. City of

Cincinnati*, 402 U.S. 611, 614, 91 S. Ct. 1686, 1688 (1971)).

The decision in *Tuck* is important because the definition of "cruelty" contained in the

previous version of the statute, which the court upheld, is nearly identical to the current version.

The previous version of the statute criminalized the "fail[ure] to provide [an animal] with proper

food, drink, shelter, or protection from weather."  D.C. Code § 22-801 (1981).  The current

version of the statute criminalizes, among other things, the failure to provide an animal "with

22

proper food, drink, air, light, space, veterinary care, shelter or protection from the weather." D.C.

Code § 22-1001. The current version of the statute contains additional terms – air, light, space,

and veterinary care – not included in the earlier version, making the statute more precise, not

less.[19] The Court therefore concludes, like the *Tuck* court, that a "reasonably prudent person,

familiar with the conditions [the statute is] meant to address and the objectives the [statute] is

meant to achieve, would have fair warning of what [it] require[s]." *Freeman United Coal*

*Mining Co. v. Federal Mine Safety & Health Review Comm'n*, 323 U.S. App. D.C. 304, 308, 108

F.3d 358, 362 (D.C. Cir. 1997) (citations omitted).

### C.   Count II: The Freedom From Cruelty to Animal Protection Act Is Facially Unconstitutional.

In Count II, Plaintiffs allege that "[o]n its face, the Freedom from Cruelty to Animal

Protection Act is unconstitutional for its complete failure to provide notice and meaningful

opportunity for pet owners to contest the seizure, detention, terms of release and treatment of

their pets." First Am. Compl. at ¶ 77. Plaintiffs draw specific attention to the Act's failure to: (i)

"establish reasonable and articulable standards for the seizure of pets," (ii) "provide reasonable

notice and a meaningful opportunity to be heard to contest the seizure, detention, release terms

and treatment of pets," (iii) "set reasonable and articulable standards for the release of seized

pets," (iv) "prevent involuntary medical treatment," and (v) prevent "the imposition of arbitrary

and capricious fines, penalties and fees." *Id*. at ¶ 76. Defendants seek dismissal of Count II on

the ground that "Plaintiffs cannot make the requisite showing that there is no set of

---

[19]   While Plaintiffs seem to suggest that "neglect" in § 22-1004(b) is vague because it has been left undefined by the legislature, the Court does not read the statute that way. The Court interprets the term "neglect" in light of § 22-1001(a), which was upheld in *Tuck*.

circumstances under which the statute could operate constitutionally." Wash. Humane Soc.

Reply Br. at 4. *See also* D.C. Reply Br. at 6. The Court concludes that Plaintiffs have stated a

valid claim for relief.

Plaintiffs allege a violation of their procedural due process rights,[20] which means the

Court must apply a "two-step process in deciding the constitutional question presented." *Propert*

*v. District of Columbia*, 292 U.S. App. D.C. 219, 223, 948 F.2d 1327, 1331 (D.C. Cir. 1991)

(citing *Ingraham v. Wright*, 430 U.S. 651, 672, 97 S. Ct. 1401, 1413 (1977)). First, the Court

"must determine whether [Plaintiffs] ha[ve] asserted a property interest encompassed within the

protection of the due process clause; if [they have], [the Court must] go on to decide what

process was due." *Id*.

The first step of the Court's analysis is uncomplicated. Plaintiffs allege that their pets

were involuntarily "seized, detained and damaged" by the Washington Humane Society. First

Am. Compl. at ¶ 1. The Defendants effectively concede, and the Court agrees, that Plaintiffs

have a protected property interest in their animals. *See Porter v. DiBlasio*, 93 F.3d 301, 305 (7th

Cir. 1996) ("The parties do not dispute, and we certainly agree, that [Plaintiff's] ownership

interest in the nine horses is a protected property interest under the Fourteenth Amendment.").

For so long "as a property deprivation is not *de minimis*, its gravity is irrelevant to the question

[of] whether account must be taken of the Due Process Clause." *Goss v. Lopez*, 419 U.S. 565,

576, 95 S. Ct. 729, 737 (1975) (citing *Sniadach v. Family Fin. Corp.*, 395 U.S. 337, 342, 89 S.

---

[20] Because the District of Columbia is a political entity created by the federal
government, it is subject to the restrictions of the Fifth Amendment, not the Fourteenth. *See
Bolling v. Sharpe*, 347 U.S. 497, 499, 74 S. Ct. 693, 694 (1954). The procedural requirements of
the two are the same.

Ct. 1820, 1823 (1969) (Harlan, J., concurring); *Boddie v. Connecticut*, 401 U.S. 371, 378-379, 91

S. Ct. 780, 786 (1971); *Board of Regents v. Roth*, 408 U.S. 564, 570 n.8, 92 S. Ct. 2701, 2706

(1972)).  Plaintiffs' property interest in their pets is not *de minimis*.

"Having determined that [Plaintiffs] possessed a protected property interest in [their

animals], the next question is what process was due." *Propert*, 292 U.S. App. D.C. at 223, 948

F.2d at 1331.  This is a more complicated question.  While it may be true that "the contours of

due process are flexible and vary depending upon the circumstances of a given case," 292 U.S.

App. D.C. at 224, 948 F.2d at 1332 (citing *Zinermon v. Burch*, 494 U.S. 113, 127, 110 S. Ct.

975, 984 (1990)), the Supreme Court has instructed that "[t]he fundamental requirement of due

process is the opportunity to be heard 'at a meaningful time and in a meaningful manner,'"

*Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 902 (1976) (quoting *Armstrong v.*

*Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 1191 (1965)) (other citation omitted).  "Thus, the due

process clause requires, at minimum, that the government provide notice and some kind of

hearing before final deprivation of a property interest." *Propert*, 292 U.S. App. D.C. at 223, 948

F.2d at 1331 (citations omitted).  "The notice provided must be 'reasonably certain to inform

those affected,' and the opportunity to be heard must be given 'at a meaningful time and in a

meaningful manner.'" *Propert*, 292 U.S. App. D.C. at 224, 948 F.2d at 1332 (quoting *Mullane v.*

*Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315, 70 S. Ct. 652, 657 (1950); *Armstrong*,

*supra*, 380 U.S. at 552, 85 S. Ct. at 1191).

The "precise form of notice and the precise kind of hearing required" in a given case

"depends upon a balancing of the competing public and private interests involved." *Propert*, 292

U.S. App. D.C. at 224, 948 F.2d at 1332.  As outlined in *Mathews v. Eldridge*, *supra*, the Court

must consider three separate factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335, 96 S. Ct. at 903. "Depending upon the tilt of the *Mathews* balance in a particular case, the usual requirement of written notice may be relaxed, and the timing and content of the hearing may vary." *Propert*, 292 U.S. App. D.C. at 224, 948 F.2d at 1332 (citations omitted). Notwithstanding the inherent flexibility in this approach, or the weight attributable to the governmental interest at stake, "the amount of process required can never be reduced to zero - that is, the government is never relieved of its duty to provide *some* notice and *some* opportunity to be heard prior to final deprivation of a property interest." *Id*. (citations omitted).

Plaintiffs' challenge to the constitutionality of the Animal Protection Act targets D.C. Code § 22-1004,[21] which provides:

**§ 22-1004.  Arrests without warrant authorized; notice to owner.**

a) Any person found violating the laws in relation to cruelty to animals may be arrested and held without a warrant . . . .   The person making the arrest or the humane officer taking possession of an animal shall have a lien on said animals for the expense of such care and provisions.
. . . .

(b) (1) A humane officer of the Washington Humane Society may take possession of any animal to protect it from neglect or cruelty. The person taking possession of the animal or animals, shall use reasonable diligence to give notice thereof to the owner of animals found in the charge or custody of the person arrested, and shall properly care and provide

---

[21]  D.C. Code § 22-1004 was formerly codified at D.C. Code § 22-804.

for the animals until the owner shall take charge of the animals; provided that, the owner shall take charge of the animals within 20 days from the date of the notice.

(2) If the owner or custodian of the animal or animals fails to respond after 20 days, the animal or animals shall become the property of the Washington Humane Society and the Washington Humane Society shall have the authority to:

(A) Place the animal or animals up for adoption in a suitable home;

(B) Retain the animal or animals, or

(C) Humanely destroy the animal or animals.

§ 22-1004. While this section does not define "neglect or cruelty," § 22-1001(a) defines animal cruelty, and provides for a penalty to be imposed on any person who, "having the charge or custody of any animal, . . . knowingly inflicts unnecessary cruelty upon the same, or unnecessarily fails to provide the same with proper food, drink, air, light, space, veterinary care, shelter, or protection from the weather."  D.C. Code § 22-1001(a).

It is evident from the text of § 22-1004 that the Washington Humane Society and its employees have been given considerable discretion in enforcing the District of Columbia's animal cruelty law.  The Humane Society has been given the authority to seize any "animal to protect it from neglect or cruelty."  D.C. Code § 22-1004(b).  Noticeably lacking from the statute, however, is a requirement that the Humane Society conduct a pre-seizure hearing, or even provide pre-seizure notice, before taking possession of the animal; thus, it appears a Humane Society employee can seize any animal which he or she determines, in his/her individual capacity, is suffering from cruelty or neglect.  The animal's owner (or custodian) is not given an opportunity to protest this initial seizure, nor is the owner given a post-seizure opportunity to contest whether the animal was in fact suffering from cruelty or neglect.  The Humane Society,

27

and the particular employee making the seizure, is the sole judge of whether the animal has been neglected. Additionally, as soon as the Humane Society takes possession of the animal, it is entitled, pursuant to § 22-1004(a), to maintain a lien for all expenses associated with the "care and provisions" of the seized animal. The statute does not afford the owner an opportunity to contest the amount of these expenses. The Humane Society is the sole judge of the amount of the lien.

Once the animal has been deemed to be neglected and is seized by the Humane Society, § 22-1004(b)(1) requires the Humane Society to "use reasonable diligence to give notice" of the seizure to the animal's owner. The statute does not indicate what precise types of notice are reasonable, and the Humane Society Defendants have not volunteered what forms of notice are typically used. Importantly, for due process considerations, the statute is completely silent with respect to providing the owner with an opportunity to be heard. The statute does not mandate that the animal owner ever be given an opportunity to contest the seizure or the amount of the lien, even if the Humane Society intends to destroy the animal pursuant to § 22-1004(b)(2)(c). While the Washington Humane Society Defendants ambiguously assert, in a footnote, that "[a]lthough not relevant to the disposition of Plaintiffs' [case] . . . the Humane Society in fact provides owners with notice and an opportunity for a hearing before its Executive Director prior to a final disposition, and further notice and an additional opportunity to seek injunctive relief from the D.C. Superior Court," Wash. Humane Soc. Mot. To Dism. at 9-10 n.3, the Court is nonetheless left to speculate as to the precise form of hearing routinely provided. It is not clear whether the animal owner can ever contest the seizure or lien, or whether the hearing is conducted before an impartial body.

Applying the three-prong test outlined in *Mathews*, the Court concludes that the District of Columbia must provide an animal owner notice and an opportunity for a hearing prior to permanently terminating an individual's interest in a seized animal. The animal owner must also be given an opportunity to contest the validity of the initial seizure, as well as any costs imposed on the owner. As for the first *Mathews* factor, "there can be no dispute that an animal owner has a substantial interest in maintaining his rights in a seized animal." *Porter*, 93 F.3d at 306. This is true regardless of whether the animal is "incoming-generating . . . such as horses, cattle, [and] swine," or a common household pet that provides only "companionship." *Id*. at 306. As for the second factor, the risk of an erroneous deprivation of an animal owner's rights is high. The Washington Humane Society has been given unfettered discretion to seize any animal that it judges to be neglected; the owner is not able to contest the seizure or accompanying lien. "Notice and a hearing provide the owner with the opportunity to challenge the legality of the original seizure of his animal, as well as the validity of any costs the state is attempting to assess for the seizure and care of the animal." *Id*. at 307. As for the third factor, "requiring that the [District of Columbia] provide notice and an opportunity for a hearing prior to terminating an owner's interest is not a significant burden, especially when weighed against the potential for abuse." *Id*. It does not seem overly burdensome for the Humane Society to provide some form of hearing during the twenty-day redemption period.

The Court concludes, after comparing the due process protections that ought to be provided (based on a balancing the *Mathews* factors), with the actual procedure provided by § 22-1004, that Plaintiffs have stated a valid claim for relief. The Humane Society has been given near-total authority to enforce the District of Columbia's animal protection law. This includes

the unfettered discretion to seize any animal that a Humane Society employee considers to be

neglected.  *See Anderson v. George*, 160 W. Va. 76, 79 (W. Va. 1977) (concluding that "the line

between acceptable and cruel treatment must be judicially determined in an expeditious manner,"

and not simply left to a "humane officer, who is a law enforcement officer, not an independent

magistrate or judicial officer, [and who] determines in his sole and unfettered discretion that the

animals are 'abandoned, neglected, or cruelly treated'"); *Jenks v. Stump*, 41 Colo. 281, 288

(Colo. 1907) ("[W]e find the statute seeks to clothe the Humane Society and its agents with

extraordinary powers. By its terms the agent is the sole judge of whether an animals is neglected,

abandoned or ill treated, and whether it has sufficient food, nourishment and shelter. The truth

respecting the matter cannot avail, because the agent is clothed with power to take possession of

the animals regardless of their condition.").  The Humane Society may seize an animal without

obtaining a warrant first.  Nor is it required to conduct a hearing before seizing an animal.

*Fuentes v. Shevin*, 407 U.S. 67, 81, 92 S. Ct. 1983, 1994 (1972) ("If the right to notice and a

hearing is to serve its full purpose, then, it is clear that it must be granted at a time when the

deprivation can still be prevented.").  That the seizure of the animal may be temporary does not

"alter the need for due process," *Carrera v. Bertaini*, 63 Cal. App. 3d 721, 726 (Cal. Ct. App.

1976), for "it is now well settled that a temporary non-final deprivation of property is nonetheless

a 'deprivation' in terms of the Fourteenth Amendment," *Fuentes*, 407 U.S. at 84-85, 92 S. Ct. at

1996 (citing *Sniadach*, 395 U.S. at 342, 89 S. Ct. at 1823; *Bell v. Burson*, 402 U.S. 535, 542, 91

S. Ct. 1586, 1591 (1971)).  This is not to say the Humane Society is constitutionally required to

conduct a preseizure hearing.  The Supreme Court has stated otherwise, noting that due process is

not "fixed in form" and that there may be "extraordinary situations where some valid

governmental interest is at stake that justifies postponing the hearing until after the event." *Fuentes*, 407 U.S. at 82, 92 S. Ct. at 1995.  The Court does not doubt that animal cruelty or neglect will often justify immediate seizure.

Immediate seizure without a predeprivation hearing does not, however, obviate the animal owner's right to a meaningful opportunity to be heard.  This is perhaps the statute's greatest weakness.  While Humane Society officers are authorized to conduct warrantless seizures, there is no requirement that the animal owner ever be given an opportunity to contest the Humane Society's finding of neglect underlying the seizure.  *See DiCesare v. Stuart*, 12 F.3d 973, 978 (10th Cir. 1993) ("Here, the statutory scheme under which [Plaintiff's] horses were [seized and] sold makes no provision for a hearing at any time. Compliance with the statute, therefore, did not provide . . . due process."); *see also Propert*, 292 U.S. App. D.C. at 225, 948 F.2d at 1333 ("The constitutional requirement of some kind of hearing means, at a minimum, that the affected individual must have a meaningful opportunity to present his case before a neutral decisionmaker.").  The owner is not given a meaningful opportunity to contest the amount of the lien.  *See* 4 AM. JUR. 2D ANIMALS §  30 (2006) ("Due process rights of animal owners are also violated by a state statute which authorizes humane society officers to seize any animal which, in their sole discretion, is abused or neglected, or provides that the owner of animals becomes liable for any expenses for their care, where the amount of expenses is solely controlled by the humane society and provides no opportunity for the owner to contest the seizure or sale of the animals."); *Humane Soc. of Marshall County v. Adams*, 439 So. 2d 150, 153 (Ala. 1983) (holding Alabama's animal neglect law unconstitutional because, *inter alia*, animal owner "becomes liable for any expenses for [the animal's] care, the amount of which expenses being solely controlled by the

Society"). Nor is the owner able to provide instruction regarding the type of care and

nourishment the animal will receive while in the Humane Society's custody. *See Commonwealth*

*v. Gonzalez*, 403 Pa. Super. 157, 173 (Pa. Super. Ct. 1991) ("The statute does not provide the

owner of the animal the opportunity to assure that the animals receive the proper care pending the

outcome of the criminal trial."). And while the statute may provide notice of the seizure, and

certainly contemplates that the animal will be returned to its owner, it is not clear to the Court

what notice is actually provided. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S.

306, 315, 70 S. Ct. 652, 657 (1950) (noting due process clause requires a form of notice

"reasonably certain to inform those affected," and that "process which is a mere gesture is not

due process"). For example, it is not evident whether the owner is informed that the animal will

be returned, or whether the Humane Society may place specific conditions, like veterinary care,

on the animal's return. In short, "the potential for abuse on the part of the . . . humane society is

tremendous." *Gonzalez*, 403 Pa. Super. at 173.

Plaintiffs have made a strong argument that § 22-1004 does not provide the procedural

safeguards that are prescribed by *Mathews*. *See* 4 AM. JUR. 2D ANIMALS § 30 (2006) ("The grant

of power to an officer of a humane society to take charge of any abandoned or mistreated

animals, to provide them with food, and to detain them until the expenses are paid, without

restricting the authority of the officer to cases of emergency or public necessity, and without

providing any notice to the owner or an opportunity for a hearing, has been held to be

unconstitutional as permitting a deprivation of property without due process."). For this reason,

the Court will not dismiss Count II of the amended complaint.[22]

### D.    Count IV: Destruction of Property

In Count IV, Plaintiffs allege that the Humane Society's actions, especially with respect to the forcible sterilization of Plaintiff Daskalea's dog, amount to a destruction of property.  The Washington Humane Society Defendants argue that Count IV should be dismissed because "destruction of property" is not "a cognizable cause of action under District of Columbia law." Wash. Humane Soc. Reply Br. at 10.  While it appears Defendants are correct, and that this jurisdiction does not recognize a civil claim for "destruction of property," District of Columbia law does allow recovery for damage to personal property.  *See, e.g.*, *Scharfeld v. Richardson*, 76 U.S. App. D.C. 378, 379, 133 F.2d 340, 341 (D.C. Cir. 1942) ("It is an established principle of the common law that a dog is personal property and that its owner may recover for a willful or negligent injury thereto . . . ."); *Scharfeld*, 76 U.S. App. D.C. at 382, 133 F.2d at 344 (Rutledge, J., concurring); *Gamble v. Smith*, 386 A.2d 692, 694 (D.C. 1978) ("There are two basic standards for determining the measure of damages for injury to personal property.  First, there is the reasonable cost of repairs to restore the damaged property to its former condition.  The second standard is the diminution in value of the property immediately before and after injury.") (citation

---

[22] A statute that does not satisfy the requirements of the Fourteenth Amendment does satisfy the "no set of circumstances" test of *United States v. Salerno*, 481 U.S. 739, 107 S. Ct. 2095 (1987).  *See* Isserles, Marc E., *Overcoming Overbreadth: Facial Challenges and the Valid Rule Requirement*, 48 AM. U.L. REV. 359, 403 (Dec. 1998) ("*Salerno's* facial challenge methodology . . . directs a court . . . to evaluate the challenged statute against the relevant constitutional doctrine, independent of the statute's application to particular cases.  A court entertaining a facial challenge under *Salerno* is not concerned with the details of particular statutory applications, and instead focuses on the content of the statutory terms to assess their consistency with constitutional requirements.").  In any event, Defendants have not offered even one "set of circumstances" where the statute would operate constitutionally.

and internal quotation marks omitted); STANDARDIZED CIVIL JURY INSTRUCTION FOR THE

DISTRICT OF COLUMBIA, Instruction 15-1 (1998 rev. ed.).  The Court therefore construes Count

IV as a civil claim for damage to personal property.

### E.    Count V: Conversion

In Count V, Plaintiffs allege that the Humane Society's conduct constitutes conversion.

Defendants Scnoor and Boozer seek dismissal of Count V, arguing that there are no "specific

allegations" that they were responsible for the alleged deprivations of Plaintiffs' property.  This

argument is contradicted by the amended complaint.  The amended complaint alleges that

Defendant Scnoor seized Plaintiff Daskalea's dog, First Am. Compl. at ¶¶ 13, 31-45, and that

Defendant Boozer seized Plaintiff Norris' dog, *id*. at ¶¶ 16, 46-57.  Indeed, Plaintiffs specifically

allege that both Defendant Scnoor and Boozer "seized and detained" their pets.  *Id*. at ¶¶ 13, 16.

Viewing the "facts in the complaint in the light most favorable to the plaintiffs," and granting

"the plaintiffs the benefit of all inferences that can be derived from those facts," *Lindsey*, 448 F.

Supp. 2d at 44, it may be inferred that Defendant Scnoor participated in the sterilization of

Plaintiff Daskalea's dog, and that Defendant Boozer participated in forcing unwanted veterinary

care on Plaintiff Norris' dog.  Count V will not be dismissed.

### F.    Count VI: Fraud

In Count VI, Plaintiffs allege that the Humane Society's conduct constitutes fraud.

Specifically, Plaintiffs assert that they were "threatened with criminal prosecution" when they

were given, at the time of the seizure, a form – referred to as the "Official Notification" form –

which provided the potential criminal sanctions associated with animal cruelty.  Plaintiffs allege

that the Official Notification form "falsely and fraudulently omits to inform pet owners of their . .

34

. right[s]," and that the purpose of the form is to "pressure . . . pet owners into acquiescing with whatever arbitrary . . . action the [Humane Society] may require." First Am. Compl. at ¶¶ 118-19, 123-24, 126. For example, Plaintiff Daskalea alleges that the Humane Society "told [her] that she would have to produce an apartment lease, in her name, to be able to take charge of [her dog]." *Id*. at ¶ 93. Similarly, Plaintiff Norris alleges that she was forced to "agree to unnecessary medical treatment," *id*. at ¶ 104, and Plaintiff Jackson alleges that he was forced to "consent to and pay for radical cancer surgery," *id*. at ¶ 110. Plaintiffs maintain that any conditions imposed on the return of a seized animal are fraudulent because the Humane Society is not "authorized by law to set conditions on the return of pets to their owners." *Id*. at ¶ 91. They assert that pet owners comply with the Humane Society's unreasonable demands only because they are under fear of prosecution.

Count IV must be dismissed because Plaintiffs have failed to plead an essential element of a fraud claim.[23] "At common law, the requisite elements of fraud are: (1) a false representation (2) made in reference to a material fact, (3) with knowledge of its falsity, (4) with the intent to deceive, and (5) an action that is taken in reliance upon the representation." *Daisley v. Riggs Bank, N.A.*, 372 F. Supp. 2d 61, 78 (D.D.C. 2005) (quoting *Hercules & Co. v. Shama Rest. Corp.*, 613 A.2d 916, 923 (D.C. 1992)) (quotation marks omitted). Plaintiffs' claim fails because they have not alleged that Defendants knowingly made a false representation. A closer look at the allegedly fraudulent statements shows the weakness in Plaintiffs' claim.

First, Plaintiffs assert that the Official Notification form is "knowingly false and

---

[23] Although the Court does not reach their argument, Defendants Scnoor and Boozer also argue that Plaintiffs' fraud claim fails to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).

fraudulent" because it indicates "that a pet owner found in violation of the Act is guilty of a felony, and is subject to criminal prosecution, with a penalty of up to give (5) years of incarceration and/or a $25,000.00 fine." First Am. Compl. at ¶ 119. As noted by Defendants, however, this is a completely truthful statement. The Official Notification is simply a word-for-word copy of D.C. Code § 22-1001, *see* Washington Humane Soc. Mot. To Dismiss at 16 n.6, which provides a definition of, and the punishments for, animal cruelty and neglect. That Plaintiffs may have felt threatened by the possibility that they would be prosecuted for violating the animal cruelty law does not make the form fraudulent. Plaintiffs nonetheless suggest that the Official Notification form is fraudulent, albeit truthful, because it failed to "inform" them "of their absolute right to obtain the release of their pet without any qualifications." First Am. Compl. at ¶ 124. This argument, however, is essentially just another manifestation of their due process argument, *e.g.*, that they were not provided adequate notice, masked as a fraud claim.

Second, Plaintiffs assert that they only agreed to comply with the specific conditions imposed by the Humane Society, such as unnecessary and expensive veterinary care, in order to retrieve their animals. They argue that these conditions were fraudulent because the Humane Society had no authority to withhold the release of their animals or otherwise impose any conditions on their release. This argument, much like Plaintiffs' argument pertaining to the Official Notification form, is simply another manifestation of their due process claim. In essence, Plaintiffs are not arguing these statements were false at the time they were made or that the Humane Society actually knew the statements were false; rather, Plaintiffs are arguing that the statements were *legally* false because the Humane Society was exceeding its statutory grant of power. But this argument turns on the correct interpretation of an arguably ambiguous law, D.C.

Code § 22-1004, which, given the Humane Society's purpose of protecting animals from neglect, does not seem patently unreasonable.  For this reason, Plaintiffs have failed to show that Defendants made any knowingly false statements, or that these statements were made with an intent to mislead.  Count VI is therefore dismissed.

### G.   Count VII: Negligent or Intentional Infliction of Emotional Distress

Count VIII of the amended complaint must be dismissed because Plaintiffs have failed to state a valid claim for either negligent or intentional infliction of emotional distress.  With respect to negligent infliction of emotional distress, Plaintiffs are required to show, *inter alia*, that the alleged emotional distress "result[ed] from a direct physical injury," *District of Columbia v. McNeill*, 613 A.2d 940, 943 (D.C. 1992), or, alternatively, that Plaintiffs were "present in the zone of physical danger created by [the] defendant[s'] negligence," *Mackey v. United States*, 303 U.S. App. D.C. 422, 427, 8 F.3d 826, 831 (D.C. Cir. 1993).  Plaintiffs have failed to meet either of these alternative pleading requirements.  There are no allegations that any of the Plaintiffs suffered a direct physical injury from the Humane Society's conduct; nor are there any allegations that Plaintiffs were ever present in a zone of physical danger.  The facts, as alleged, show that Plaintiffs' pets were temporarily seized by Humane Society employees.  This is not the type of conduct that would create a zone of physical danger, causing someone "to fear for [his or] her own safety."  *Mackey*, 303 U.S. App. D.C. at 427, 8 F.3d at 831.

"To recover for the tort of intentional infliction of emotional distress in the absence of a physical injury, [Plaintiffs] must demonstrate (1) 'extreme and outrageous' conduct on the part of the defendant[s] which (2) intentionally or recklessly (3) causes the plaintiff [s] 'severe emotional distress.'"  *Kaiser v. United States*, 761 F. Supp. 150, 156 (D.D.C. 1991) (citations

37

and quotation marks omitted).  Plaintiffs must establish that Defendants' "conduct was 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'  *Id*. at 156 (quoting RESTATEMENT (SECOND) OF TORTS § 46, Comment d at 73).  Here, Plaintiffs have failed to allege facts demonstrating that the Humane Society's conduct was "outrageous" or "beyond all possible bounds of decency."  *Kaiser*, *supra*.  The temporary seizure of an animal, which was conducted in a relatively benign manner according to the amended complaint, does not constitute extreme and outrageous conduct under our case law.  *See, e.g.*, *Kaiser*, 761 F. Supp. at 150 (finding no intentional infliction of emotional distress where pet owner witnessed a Capitol police officer's "senseless shooting of her [dog]").

### H.      Count VIII: Extortion

Count VIII of the amended complaint must be dismissed because, as Plaintiffs concede, *see* Plts.' Opp'n. at 11 n.1, the District of Columbia does not recognize a civil cause of action for extortion.  *See Fischer v. Estate of Flax*, 816 A.2d 1, 5 (D.C. 2003).

### CONCLUSION

Based on the foregoing, Defendants' motions to dismiss are granted in part and denied in part.  Accompanying Orders to follow.

DATE: March 13, 2007                              **JOHN GARRETT PENN**
                                                   **United States District Judge**