UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SUNDAY DASKALEA, *et al.*,

    Plaintiffs,

     v.

WASHINGTON HUMANE SOCIETY, *et al.*,

    Defendants.

Civil Action No. 03-2074 (CKK)

**MEMORANDUM OPINION**
(September 9, 2008)

Currently pending before the Court is Plaintiffs' [42] Motion for Partial Summary Judgment with respect to Count II of their Amended Complaint, which alleges that the District of Columbia's Freedom from Cruelty to Animal Protection Act, D.C. Code § 22-1001 *et seq.* (hereinafter the "Act"), is unconstitutional on its face and as customarily enforced.  Plaintiffs' Motion for Partial Summary Judgment, which is opposed by both the District of Columbia and the Individual Defendants to this action, is premised exclusively on Judge John Garrett Penn's March 13, 2007 Memorandum Opinion granting-in-part and denying-in-part Defendants' motions to dismiss Plaintiff's Amended Complaint.[1]  Judge Penn's opinion, however, merely concluded that Count II of Plaintiffs' Amended Complaint stated a claim upon which relief could be granted, and was therefore sufficient to survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Judge Penn *did not* conclude that the Act was facially invalid, and as a result, any statements in his opinion that may be read to suggest as much are dicta.

The Court has reviewed Plaintiff's Motion for Partial Summary Judgment, the two

---

[1] The above-captioned case was reassigned to this Court upon Judge Penn's death.

Oppositions to that Motion, and Plaintiffs' Reply.  Based on the foregoing, it appears that an issue may well exist as to whether the Act is unconstitutional on its face.  However, the parties' briefs in connection with Plaintiffs' Motion for Partial Summary Judgment are simply insufficient to allow the Court to resolve that question.  Accordingly, the Court shall DENY WITHOUT PREJUDICE Plaintiffs' [42] Motion for Partial Summary Judgment.  In the event that Plaintiffs believe they are entitled to summary judgment on the facial challenge included in Count II of their Amended Complaint, they must fully brief the merits of that claim; they cannot simply rely on dicta in Judge Penn's opinion to do their job for them.

## I.  BACKGROUND

Plaintiffs Sunday Daskalea, Frances Norris, and Willie Jackson allege that they "are pet owners in the District of Columbia who have had their pets seized, detained and damaged without due process of law."  Am. Compl. ¶ 1.  Plaintiffs' Amended Complaint includes both constitutional challenges to the Act and common law claims regarding the alleged seizure, detention, and damaging of Plaintiffs' pets.  *See generally* Am. Compl.  Plaintiffs' constitutional challenges to the Act focus on D.C. Code § 22-1004, which is entitled "Arrests without warrant authorized; notice to owner." D.C. Code § 22-1004.  That section provides:

(a) Any person found violating the laws in relation to cruelty to animals may be arrested and held without a warrant . . . . The person making the arrest or the humane officer taking possession of an animal shall have a lien on said animals for the expense of such care and provisions.

(b)(1) A humane officer of the Washington Humane Society may take possession of any animal to protect it from neglect or cruelty.  The person taking possession of the animal or animals, shall use reasonable diligence to give notice thereof to the owner of animals found in the charge or custody of [a] person arrested, and shall properly care for the animals until the owner shall take charge of the animals; provided that, the owner shall take charge of the animals within 20 days from the date of the notice.

(2) If the owner or custodian of the animal or animals fails to respond after 20 days, the animal or animals shall become the property of the Washington Humane Society and the Washington Humane Society shall have the authority to:
> (A) Place the animal or animals up for adoption in a suitable home;
> (B) Retain the animal or animals; or
> (C) Humanely destroy the animal or animals.

*Id.*

With respect to the individual Plaintiffs, their Amended Complaint alleges that on May 17, 2002, Plaintiff Sunday Daskalea left her dog unattended in her car "while she went up to her apartment to get some things." *Id.* ¶ 31. According to Plaintiffs, the dog, "a full-breed, pedigreed 'Dogo Argentino,'" which Ms. Daskalea had purchased "for breeding, as well as companionship," "had just been walked, watered and fed, and was in absolutely no danger" in Ms. Daskalea's car. *Id.* ¶¶ 31, 33-34. Plaintiffs do not specify how long Ms. Daskalea's dog was left unattended, but allege that while Ms. Daskalea was in her apartment, Defendant Sonya Scnoor, a Washington Humane Society (WHS) law enforcement officer, seized the dog from Ms. Daskalea's car. *Id.* ¶ 36. Plaintiffs assert that Ms. Daskalea's "[r]epeated efforts" to retrieve her dog from the WHS were unsuccessful because WHS "refused to return" the dog," *id.* ¶ 39, and further allege that "[d]uring the time that defendants had custody and control of" Ms. Daskalea's dog, the dog "was forcibly sterilized by the defendants" without Ms. Daskalea's permission and against Ms. Daskalea's will, *id.* ¶ 41. Ms. Daskalea's dog was eventually returned to her, but Plaintiffs allege that the dog's "personality has changed, [that Ms. Daskalea] is denied the love and companionship of her dog," and that Ms. Daskalea "is permanently prevented from breeding [the dog], causing pecuniary losses." *Id.* ¶¶ 43, 45. According to Plaintiffs, Ms. Daskalea "was denied the right to notice and hearing to contest the seizure, detention, sterilization and return of her pet." *Id.* ¶ 42.

3

Plaintiffs allege that on July 19, 2001, Plaintiff Frances Norris left her dog unattended in her car while she "went to [a] nearby sports club." *Id.* ¶ 47.  According to Plaintiffs, Dr. Norris "parked her car under a large shade tree . . . cracked all four car windows, [and] left food and water for" her dog.  *Id.*  Plaintiffs allege that upon returning to her car, Dr. Norris found that WHS officer H.O. Boozer had entered her car and seized her dog "without her permission, knowledge or consent." *Id.* ¶ 48.  Plaintiffs allege that, at the time Dr. Norris's dog was seized, "she was perfectly fine and in absolutely no danger," *id.* ¶ 49, and further allege that Dr. Norris's efforts to retrieve her dog from WHS were unsuccessful, *id.* ¶ 54.  According to Plaintiffs, WHS eventually agreed to return Dr. Norris's dog "but only if Dr. Norris agreed to pay unreasonable and unjustifiable fees and costs, and submit [her dog] to unnecessary medical treatment." *Id.* ¶ 55.  Dr. Norris agreed to the medical treatment in order to get her dog back, and alleges that when the dog was released "she was in terrible condition." *Id.* ¶ 56.  Plaintiffs allege that, like Ms. Daskalea, "Dr. Norris was denied the right to notice and hearing to contest the seizure, detention, terms of release and fees associated with the seizure and detention of her pet." *Id.* ¶ 57.

Plaintiffs allege that on October 11, 2003, WHS law enforcement officers entered the home of Plaintiff Willie A. Jackson and "illegally seized" his dog, against Mr. Jackson's will. *Id.* ¶ 61.  Plaintiffs assert that Mr. Jackson's dog "was a well-cared for animal, and enjoyed the benefits of a loving owner," but had "developed terminal cancer." *Id.* ¶¶ 58-59.  Plaintiffs further assert that "[s]ince at least July of 1999, Mr. Jackson religiously brought" his dog to a veterinary clinic for veterinary care and that the dog "had regular check-ups, annual vaccines, and all the medical care Mr. Jackson and [the dog's] veterinarian deemed appropriate." *Id.* ¶ 60.  According to Plaintiffs, after WHS seized Mr. Jackson's dog, it refused to return the dog "despite numerous demands," *id.*

4

¶ 61, and despite being provided with the dog's veterinary records, *id.* ¶ 62, unless Mr. Jackson would "consent to, and pay for, [the dog] to undergo major, cancer surgery, and other heroic efforts, even though Mr. Jackson, in consultation with [the dog's] veterinarian, decided against this radical treatment," *id.* ¶ 64. Plaintiffs allege that Mr. Jackson was compelled to agree to the cancer surgery, which was ultimately unsuccessful, and the dog died. *Id.* ¶ 65. According to Plaintiffs, "Mr. Jackson was denied the right to notice and hearing to contest the seizure, detention, terms of release, medical treatment, and fees associated with the seizure, detention, release and medical treatment of his pet." *Id.* ¶ 70.

Plaintiffs' Amended Complaint names as Defendants the Washington Humane Society; the District of Columbia; Jody Huckaby, individually and in her official capacity as Executive Director of WHS; Adam Parascandola, individually and in his official capacity as Director of Law Enforcement for WHS; Sonya Scnoor, individually and in her official capacity as the WHS law enforcement officer who seized and detained Ms. Daskalea's dog; Rosemary Vozobule, individually and in her official capacity as a WHS law enforcement officer who refused to return Ms. Daskalea's dog; Lindsay Gardewin, individually and in her official capacity as a WHS law enforcement officer who seized and refused to return Mr. Jackson's dog; and H.O. Boozer, individually and in her official capacity as the WHS law enforcement officer who seized and refused to return Dr. Norris's dog.[2] Significantly, Washington Humane Society is no longer a defendant to this action, as Judge

---

[2] Plaintiffs' Amended Complaint also names as defendants John Does 1-10, who are alleged WHS law enforcement officers, directors, and or members "whose identities are presently unknown to plaintiffs, and who illegally seized and detained the pets of the plaintiff class." Am. Compl. ¶ 17. Plaintiffs Daskalea, Norris, and Jackson bring their Amended Complaint on their own behalf and on behalf of an alleged class of "similarly situated pet owners living in the District of Colombia, and those persons who are not residents of the District, but who have had their animals seized by defendants, on or after August 4, 2000," the date of the Act's enactment.

Penn determined that WHS is *non sui juris* and therefore granted WHS' motion to dismiss Plaintiffs' Amended Complaint as against WHS.  *See Daskalea v. Washington Humane Society*, 480 F. Supp. 2d 16, 22-24 (D.D.C. 2007).  The District of Columbia remains a Defendant to Plaintiffs' Amended Complaint.  *See* Am. Compl. ¶ 10.

Plaintiffs' Amended Complaint originally included eight Counts, three constitutional claims and five common law tort claims.  Count I asserted a general claim pursuant to 42 U.S.C. § 1983 that the various Defendants "deprived them of personal and property interests without due process of law, in violation of the fifth and fourteenth amendments to the Constitution," as well as their "right to be free from unreasonable searches and seizures pursuant to the fourth amendment to the Constitution," *id.* ¶¶ 71-74; Count II alleged that the Act is unconstitutional on its face and as customarily enforced, *id.* ¶¶ 75-78; and Count III alleged that Defendants' "application of the Act to the individually named plaintiffs violated their due process rights," *id.* ¶¶ 79-80; Count IV alleged destruction of property, *id.* ¶¶ 81-82; Count V alleged conversion, *id.* ¶¶ 83-85, Count VI alleged fraud with respect to each individually named Plaintiff and with respect to all Plaintiffs, *id.* ¶¶ 86-130; Count VII alleged negligent or intentional infliction of emotional distress, *id.* ¶¶ 131; and Count VIII alleged extortion, *id.* ¶¶ 132-141.

In his March 13, 2007 Memorandum Opinion, Judge Penn dismissed Plaintiffs' fraud claims, negligent or intentional infliction of emotional distress claims, and extortion claims (Counts VI, VII, and VIII of the Amended Complaint).  *Daskalea*, 480 F. Supp. 2d at 37-39.  Accordingly, Plaintiffs'

---

Am. Compl. ¶ 142.  Plaintiff's Motion for Class Certification, filed May 28, 2004 has been held in abeyance pending resolution of the instant motion for partial summary judgment and the Individual Defendants' motion for judgment on the pleadings on qualified immunity grounds, which the Court shall address in a separate opinion.  *See* 11/20/07 Order, Docket No. [49].

remaining claims are their facial and as-applied constitutional claims, as well as their common law

claims for destruction of property and conversion.   Only one of those claims–Count II of the

Amended Complaint–is at issue in this Memorandum Opinion.   Count II specifically alleges that the

Freedom from Cruelty Animal Protection Act of 2000, D.C. Code §22-1001 *et seq.*, "is

unconstitutional because as written, and as customarily enforced, it fails to provide animal owners

with a meaningful right to contest the seizure, detention, and terms of release of their pets, prior [to]

final action which permanently affects a pet owner's rights." *Id.* ¶ 75.   In particular, Plaintiffs

challenge the Act's alleged failure to

> (1) establish reasonable and articulable standards for the seizure of pets; (2) to
> provide reasonable notice and a meaningful opportunity to be heard to contest the
> seizure, detention, release terms and treatment of pets; (3) to set reasonable and
> articulable standards for the release of seized pets; (4) to prevent involuntary medical
> treatment of pets; and (5) [to prevent] the imposition of arbitrary and capricious fines,
> penalties and fees.

*Id.* ¶ 76.  Plaintiffs' Amended Complaint does not further clarify whether their allegation that the Act

fails to "establish reasonable and articulable standards" for the seizure and release of pets is meant

to suggest that the Act is unconstitutionally vague.  *Id.*   To the extent that is Plaintiffs' intent, the

Court notes that Judge Penn's March 13, 2007 Memorandum Opinion specifically rejected a claim

that the Act was unconstitutionally vague for use of the term "neglect."  *See Daskalea*, 480 F. Supp.

2d at 30.

In his March 13, 2007 Memorandum Opinion, Judge Penn discussed Count II of Plaintiffs'

Amended Complaint at length and concluded that the Count should not be dismissed pursuant to

Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs had stated a valid claim for relief.  *See id.*

at 31-36.  Significantly, while various Defendants sought dismissal of Count II "on the ground that

'Plaintiffs cannot make the requisite showing that there is no set of circumstances under which the statute could operate constitutionally,'" *id.* at 31 (quoting Defs' Briefs), Judge Penn did not actually reach a conclusion regarding Plaintiffs' ability to meet the so-called *Salerno* standard, which is based upon *United States v. Salerno*, 481 U.S. 739, 745 (1987).   Rather, Judge Penn only concluded that Count II alleged facts sufficient to withstand a motion to dismiss for failure to state a claim.   *Id.* at 31-36.   As Judge Penn *did not* actually conclude that the Act was facially invalid, this Court views any statements in his opinion that may be read to suggest as much as dicta.

Plaintiffs filed their Motion for Partial Summary Judgment on November 6, 2007.   On December 6, 2007, the District of Columbia and the Individual Defendants to this action filed separate Oppositions to Plaintiffs' Motion.   Plaintiffs filed their Reply in further support of their Motion on December 20, 2007.

## II. DISCUSSION

Plaintiffs' Motion for Partial Summary Judgment asks the Court to enter judgment on their claim that the Act is unconstitutional on its face because it allegedly fails to provide pet owners in the District of Columbia with due process.   *See* Pl.'s Mot. at 1.   Plaintiffs presumably bring their motion in the form of one for summary judgment because they rely exclusively on Judge Penn's March 13, 2007 Memorandum Opinion, which is, strictly speaking, outside the pleadings. Nevertheless, because no discovery has been conducted in this case and because Count II involves a facial challenge that does not depend on Plaintiffs' factual allegations, the text of Federal Rule of Civil Procedure 56–which provides that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact–is not entirely applicable.   *See* Fed. R. Civ. P. 56(c).   In considering Plaintiffs'

motion, then, the Court asks whether Plaintiffs are "entitled to judgment as a matter of law." *Id.*

As an initial matter, the Court notes that, although Plaintiffs move for summary judgment on the entirety of Count II, their Memorandum of Law in support of their motion only addresses the facial challenge contained in that Count. *See* Pls.' Mem. at 5-6. Count II, however, also appears to include a claim that the Act is unconstitutional as customarily enforced. *See* Am. Compl. ¶¶ 75-78. The Individual Defendants' Opposition correctly points out that "Plaintiffs do not present any material facts relevant to this claim," Indiv. Defs' Opp'n at 1, and as discovery has not yet been conducted in this case, the record is devoid of any evidence of how the Act was or is customarily enforced. Thus, with respect to any customary enforcement claim contained in Count II of the Amended Complaint, Plaintiffs have failed to carry their initial burden under Federal Rule of Civil Procedure 56 "of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Accordingly, at this time, Plaintiffs are not entitled to summary judgment on their claim in Count II that the Act is unconstitutional as customarily enforced.

Plaintiffs' request for summary judgment on the facial challenge to the Act contained in Count II of their Amended Complaint is premised entirely on Judge Penn's Memorandum Opinion, which, *inter alia*, denied Defendants' motions to dismiss Count II for failure to state a claim. *See generally* Pls' Mem.[3]  With no legal support other than Judge Penn's Memorandum Opinion and

---

[3] In support of their Motion for Partial Summary Judgment, Plaintiffs proffer what they title a "Statement of Material Facts as to Which No Genuine Issue Exists." *See* Pls.' Stmt. As the Individual Defendants note, that four paragraph statement consists largely of legal

virtually no legal analysis, Plaintiffs assert that they have a property interest in their pets which is not *de minimis* and that the Act is facially unconstitutional because it "does not provide them with any meaningful notice and opportunity to be heard." Pls.' Mem. at 5-6. The Court reaches no conclusions at this point as to the merits of Plaintiffs' facial challenge. As a point of clarification, however, the Court notes that while Plaintiffs are correct that the Act, on its face, does not provide for either a pre-seizure or post-seizure opportunity for a pet owner to be heard regarding the seizure of his or her pet or any lien imposed by the WHS, the Act *does* require a WHS officer seizing an animal on the basis of neglect or cruelty to "use reasonable diligence to give notice thereof to the owner of animals." *See* D.C. Code § 22-1004(b).

A legitimate question may well exist as to whether the Act, on its face, comports with the requirements of due process insofar as it fails to provide a pre- or post-deprivation opportunity to be heard. However, Plaintiffs' Motion for Partial Summary Judgment is simply insufficient to allow the Court to legitimately consider the question. As noted repeatedly above, Judge Penn's Memorandum Opinion *did not* determine that the Act was facially unconstitutional and therefore cannot form the sole basis for a summary judgment ruling on Count II of Plaintiff's Amended Complaint. Further, while Plaintiffs proffer some additional argument regarding the alleged facial invalidity of the Act in their Reply, because Defendants have not had the opportunity to respond to Plaintiffs' Reply arguments it would be inappropriate for the Court to grant summary judgment

conclusions supported by citations to Judge Penn's Memorandum Opinion. Indiv. Defs. Opp'n to Pls.' Stmt. at 2-3. Plaintiffs' purported factual assertions are irrelevant to their Motion for Partial Summary Judgment because Plaintiffs only seek summary judgment on their facial challenge and, by definition, evaluating that claim only requires consideration of the text of the Act. *Cf. Gen. Elec. Co. v. Johnson*, 362 F. Supp. 2d 327, 337 (D.D.C. 2005) ("a facial challenge to the text of a statute does not typically require discovery for resolution because the challenge focuses on the language of the statute itself").

based upon those arguments.  If Plaintiffs believe that they are entitled to summary judgment on their facial challenge to the Act they will have to properly brief the issue by discussing the voluminous and detailed legal authority regarding facial challenges to statutes on due process grounds so as to provide the Court with an adequate basis on which to make a ruling.  The Court shall therefore deny Plaintiffs' Motion for Partial Summary Judgment as to Count II without prejudice.

In order to frame the briefing in the event that Plaintiffs renew their motion for summary judgment on their claim of facial unconstitutionality, the Court addresses the argument raised by Defendants in their Oppositions: that Plaintiffs' facial challenge must fail because Plaintiffs cannot meet their burden under *Salerno* of proving "that no set of circumstances exists in which the [Act] could operate constitutionally."  *See* Indiv. Defs.' Opp'n at 2; *see generally* Dist. Mem.  In *Salerno*, the Supreme Court stated that

> A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid.  The fact that the . . . Act might operate unconstitutionally under some circumstances is insufficient to render it wholly invalid, since we have not recognized an "overbreadth" doctrine outside the limited context of the First Amendment.

*Salerno*, 481 U.S. at 745.  Accordingly, a party asserting a facial challenge to a statute bears a "heavy burden."  *Id.*  Since *Salerno* was decided, the D.C. Circuit has "invoked *Salerno*'s no-set-of-circumstances test to reject facial constitutional challenges."  *Amfac Resorts, L.L.C. v. United States Dep't of Interior*, 282 F.3d 818, 826 (D.C. Cir. 2002), *vacated in part on other grounds sub nom. Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803 (2003) (citing *James Madison Ltd., by Hecht v. Ludwig*, 82 F.3d 1085, 1101 (D.C. Cir. 1996); *Chemical Waste Mgmt. v. EPA*, 56 F.3d 1434, 1437 (D.C. Cir. 1995); *Steffan v. Perry*, 41 F.3d 677, 693 (D.C. Cir. 1994) (en banc)); *see also*

*Nebraska v. EPA*, 331 F.3d 995, 998-99 (D.C. Cir. 2003).

In particular, in *Chemical Waste Management v. EPA*, the D.C. Circuit addressed a facial challenge to the EPA's off-site rule on the acceptability of facilities to receive hazardous waste removed from superfund sites. *Chemical Waste Mgmt.*, 56 F.3d 1434. As explained in that case, the EPA's off-site rule required the EPA to notify a facility that it had made an initial determination of "unacceptability," and provide the basis for the initial determination, after which the affected facility could request an informal conference or submit written comments in order to prove its acceptability. *Id.* at 1435. "Unless the EPA determine[d] the information provided [was] adequate to support a finding of acceptability, the facility bec[ame] 'unacceptable' on the 60th day after the initial notice." *Id.* at 1435. The facility could then request reconsideration by the EPA Regional Administrator. *Id.* at 1436. In *Chemical Waste Management*, the D.C. Circuit determined that it was "unable to reach the merits" of the facial challenge to the EPA's off-site rule because the petitioners in that case had "not made a proper facial challenge." *Id.* at 1437. Citing *Salerno*, the D.C. Circuit stated:

> We discern at least one scenario where the off-site rule would be procedurally valid. The rule suffers no procedural infirmities where a facility does not dispute the initial finding of unacceptability. Under such circumstances, the procedural safeguards petitioners allege are lacking become unnecessary for the simple reason that the facility is not challenging the finding in any respect. While this hypothetical scenario may not be common, it is sufficient to establish that petitioners' facial challenge must fail. Consequently, if petitioners are to succeed, they must bring a constitutional challenge as applied specifically to them.

*Id.*

More recently, this Court applied the D.C. Circuit's *Chemical Waste Management* logic to a facial challenge to the District of Columbia's Comprehensive Merit Personnel Act of 1978

(CMPA), as it existed prior to April 5, 2005.  *See Lightfoot v. District of Columbia*, Civil A. No. 01-1484, 2007 WL 108747 (D.D.C. Apr. 10, 2007).  In so doing, the Court noted that the statute at issue in *Lightfoot*–the CMPA–"involves an initial determination that an employee's benefits are subject to modification, notice to the employee of that determination, and a post-determination hearing on the employee's claim of entitlement to benefits, at which the employee may present evidence." 2007 WL 1087474 at *5 (citing D.C. Code §§ 1.624.24(b) and (d)).  The Court concluded, based on the D.C. Circuit's logic in *Chemical Waste Management*, that the *Lightfoot* plaintiffs had not met their *Salerno* burden "because the CMPA would suffer no procedural infirmities where an employee does not dispute the initial determination that a change of condition has occurred requiring a modification of benefits."  *Id.*

Defendants attempt to invoke this same logic in the instant case, arguing that the Act would not be unconstitutional in the situation "where a pet owner does not dispute the initial seizure of an animal pursuant to allegations of cruelty or neglect."  Dist. Mem. at 3; *see also* Indiv. Defs.' Mem. at 5-6.  While Defendants' argument is initially appealing, the Court notes that the Act at issue in this case differs in a key respect from the CMPA in *Lightfoot* and the EPA's off-site rule in *Chemical Waste Management*.  In each of those cases the relevant statutory language provided for notice as well as *some* opportunity to be heard before a final determination affecting the beneficiaries' or facilities' rights.  *See Lightfoot*, 2007 WL 1087474 at *5; *Chem. Waste Mgmt.*, 56 F.3d at 1435-36.  As such, where an individual beneficiary or facility did not invoke the procedures offered to it to challenge the agency's initial determination, that beneficiary or facility would receive all the process it was due simply by virtue of the notice and the offer of an opportunity to be heard.  Any alleged deficiencies in the actual hearing procedures would not affect whether the claimant received due

13

process.  In contrast, the Act at issue in this case does not, on its face, provide pet owners with any opportunity to be heard, either before or after the seizure of their animals, concerning either the justification for the seizure or any lien imposed by the WHS.  *See* D.C. Code § 22-1004(b).

The Court does not, at this time, reach any conclusions regarding the merits of Plaintiffs' facial claim, which Plaintiffs will be required to establish through proper briefing if they so choose. Defendants are correct that, under *Salerno* and subsequent D.C. Circuit precedent, Plaintiffs are required to show that there is no set of circumstances in which the Act can be constitutionally applied in order to prevail on their facial challenge.  *See Lightfoot*, 2007 WL 1087474 at *4 ("the burden does not . . . shift to [defendant] to prove circumstances under which the statute's application would be []constitutional.") (citations omitted).  The Court also does not reach the merits of Defendants' *Salerno* defense to Plaintiffs' facial claim at this time.  Instead, the Court notes that in the event that Plaintiffs opt to renew their motion for partial summary judgment on their facial claim, Defendants' opposition to that renewed motion must address the fact that the Act in this case does not, on its face, provide an opportunity to be heard and may be distinguished from the statutes at issue in *Chemical Waste Management* and *Lightfoot* on that ground.  In particular, Defendants' opposition should discuss whether the Act's facial failure to provide an opportunity to be heard is fatal or whether additional precedent exists applying the *Salerno* standard to a statute that, like the Act in this case, does not provide an opportunity to be heard on its face.  Finally, Defendants should be prepared to address Plaintiffs' assertion that Defendants' *Salerno* argument essentially boils down to a claim that due process is not violated where no due process is requested, and that "[n]o statute would be facially unconstitutional under *Salerno* if the circumstance considered was a claimant who was not interested in due process."  Pls.' Reply at 5.

14

### III.  CONCLUSION

For the foregoing reasons, the Court shall DENY WITHOUT PREJUDICE Plaintiffs' [42] Motion for Partial Summary Judgment on Count II of their Amended Complaint.  In the event that Plaintiffs believe they are entitled to summary judgment on the facial challenge contained in that Count, they must support their claim with legal briefing to allow the Court to consider the merits of Plaintiffs' claim.  If Plaintiffs intend to pursue a renewed motion for partial summary judgment on the facial challenge contained in Count II, they must shall file such a motion no later than September 30, 2008.   If no such motion is filed, the parties shall file a Joint Status Report on September 30, 2008 which addresses whether briefing on Plaintiffs' motion for class certification (currently held in abeyance) should be completed and/or whether an Initial Scheduling Conference should be set so that the Court may proceed to enter a scheduling order for discovery in this matter.  An appropriate Order accompanies this Memorandum Opinion.

Date:   September 9, 2008


_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge