UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SUNDAY DASKALEA, *et al.*,

    Plaintiffs,

     v.

WASHINGTON HUMANE SOCIETY, *et al.*,

    Defendants.

Civil Action No. 03-2074 (CKK)

**MEMORANDUM OPINION**
(September 9, 2008)

Currently pending before the Court is the Individual Defendants' [54] Motion for Judgment on the Pleadings in which they assert that they are entitled to qualified immunity against Plaintiffs' constitutional claims and a qualified privilege against Plaintiffs' common law tort claims.[1]  The Court has throughly reviewed the Individual Defendants' Motion, Plaintiffs' Opposition, the Individual Defendants' Reply, and the relevant statutes and case law.  Based upon the foregoing, the Court shall GRANT-IN-PART and DENY-IN-PART WITHOUT PREJUDICE the Individual Defendants' Motion.  In particular, the Court concludes that the Individual Defendants are entitled to qualified immunity from the personal capacity claims for damages included in Plaintiffs' constitutional claims, insofar as those claims are based on the Individual Defendants' alleged enforcement of the District of Columbia Freedom from Cruelty Animal Protection Act of 2000, D.C. Code 22-1001 *et seq.* (the "Act"), as written.  However, with respect to the other allegations incorporated in Plaintiffs' constitutional claims, i.e., Plaintiffs' allegations regarding actions taken

---

[1] In keeping with the parties' briefs, the Court uses the term "Individual Defendants" to collectively describe Defendants Rosemary Vozobule, Adam Parascandola, Jody Huckaby, Lindsay Gardewin, Sonya Scnoor, and H.O. Boozer. *See* Indiv. Defs.' Mot. at 1.

*after* their pets were purportedly seized, the Individual Defendants' briefs are insufficient to establish their entitlement to qualified immunity.  Similarly, while the Individual Defendants assert that they are entitled to a qualified law enforcement privilege against Plaintiffs' common law tort claims, they have not established that that privilege is applicable to the allegations actually contained in Plaintiffs' claims for damage to personal property and conversion.  Accordingly, if the Individual Defendants believe they are entitled to qualified immunity against Plaintiffs' allegations regarding actions taken *after* their pets were allegedly seized or a qualified privilege against Plaintiffs' common law tort claims, they must properly and thoroughly brief those issues for the Court's consideration.

## I.  BACKGROUND

Plaintiffs Sunday Daskalea, Frances Norris, and Willie Jackson allege that they "are pet owners in the District of Columbia who have had their pets seized, detained and damaged without due process of law."  Am. Compl. ¶ 1.  Plaintiffs' Amended Complaint includes both constitutional challenges to the Act and common law claims regarding the alleged seizure, detention, and damaging of Plaintiffs' pets.  *See generally* Am. Compl.  Plaintiffs' constitutional challenges to the Act focus on D.C. Code § 22-1004, which is entitled "Arrests without warrant authorized; notice to owner." D.C. Code § 22-1004.  That section provides:

> (a) Any person found violating the laws in relation to cruelty to animals may be arrested and held without a warrant . . . . The person making the arrest or the humane officer taking possession of an animal shall have a lien on said animals for the expense of such care and provisions.
>
> (b)(1) A humane officer of the Washington Humane Society may take possession of any animal to protect it from neglect or cruelty.  The person taking possession of the animal or animals, shall use reasonable diligence to give notice thereof to the owner of animals found in the charge or custody of [a] person arrested, and shall properly care for the animals until the owner shall take charge of the animals; provided that, the owner shall take charge of the animals within 20 days from the date of the notice.

> (2) If the owner or custodian of the animal or animals fails to respond after 20 days,
> the animal or animals shall become the property of the Washington Humane Society
> and the Washington Humane Society shall have the authority to:
>> (A) Place the animal or animals up for adoption in a suitable home;
>> (B) Retain the animal or animals; or
>> (C) Humanely destroy the animal or animals.

*Id.*

With respect to the individual Plaintiffs, their Amended Complaint alleges that on May 17, 2002, Plaintiff Sunday Daskalea left her dog unattended in her car "while she went up to her apartment to get some things." *Id.* ¶ 31. According to Plaintiffs, the dog, "a full-breed, pedigreed 'Dogo Argentino,'" which Ms. Daskalea had purchased "for breeding, as well as companionship," "had just been walked, watered and fed, and was in absolutely no danger" in Ms. Daskalea's car. *Id.* ¶¶ 31, 33-34. Plaintiffs do not specify how long Ms. Daskalea's dog was left unattended, but allege that while Ms. Daskalea was in her apartment, Defendant Sonya Scnoor, a Washington Humane Society (WHS) law enforcement officer, seized the dog from Ms. Daskalea's car. *Id.* ¶ 36. Plaintiffs assert that Ms. Daskalea's "[r]epeated efforts" to retrieve her dog from the WHS were unsuccessful because WHS "refused to return" the dog," *id.* ¶ 39, and further allege that "[d]uring the time that defendants had custody and control of" Ms. Daskalea's dog, the dog "was forcibly sterilized by the defendants" without Ms. Daskalea's permission and against Ms. Daskalea's will, *id.* ¶ 41. Ms. Daskalea's dog was eventually returned to her, but Plaintiffs allege that the dog's "personality has changed, [that Ms. Daskalea] is denied the love and companionship of her dog," and that Ms. Daskalea "is permanently prevented from breeding [the dog], causing pecuniary losses." *Id.* ¶¶ 43, 45. According to Plaintiffs, Ms. Daskalea "was denied the right to notice and hearing to contest the seizure, detention, sterilization and return of her pet." *Id.* ¶ 42.

Plaintiffs allege that on July 19, 2001, Plaintiff Frances Norris left her dog unattended in her car while she "went to [a] nearby sports club." *Id.* ¶ 47.  According to Plaintiffs, Dr. Norris "parked her car under a large shade tree . . . cracked all four car windows, [and] left food and water for" her dog.  *Id.*  Plaintiffs allege that upon returning to her car, Dr. Norris found that WHS officer H.O. Boozer had entered her car and seized her dog "without her permission, knowledge or consent." *Id.* ¶ 48.  Plaintiffs allege that, at the time Dr. Norris's dog was seized, "she was perfectly fine and in absolutely no danger," *id.* ¶ 49, and further allege that Dr. Norris's efforts to retrieve her dog from WHS were unsuccessful, *id.* ¶ 54.  According to Plaintiffs, WHS eventually agreed to return Dr. Norris's dog "but only if Dr. Norris agreed to pay unreasonable and unjustifiable fees and costs, and submit [her dog] to unnecessary medical treatment." *Id.* ¶ 55.  Dr. Norris agreed to the medical treatment in order to get her dog back, and alleges that when the dog was released "she was in terrible condition." *Id.* ¶ 56.  Plaintiffs allege that, like Ms. Daskalea, "Dr. Norris was denied the right to notice and hearing to contest the seizure, detention, terms of release and fees associated with the seizure and detention of her pet." *Id.* ¶ 57.

Plaintiffs allege that on October 11, 2003, WHS law enforcement officers entered the home of Plaintiff Willie A. Jackson and "illegally seized" his dog, against Mr. Jackson's will.  *Id.* ¶ 61. Plaintiffs assert that Mr. Jackson's dog "was a well-cared for animal, and enjoyed the benefits of a loving owner," but had "developed terminal cancer." *Id.* ¶¶ 58-59.  Plaintiffs further assert that "[s]ince at least July of 1999, Mr. Jackson religiously brought" his dog to a veterinary clinic for veterinary care and that the dog "had regular check-ups, annual vaccines, and all the medical care Mr. Jackson and [the dog's] veterinarian deemed appropriate." *Id.* ¶ 60.  According to Plaintiffs, after WHS seized Mr. Jackson's dog, it refused to return the dog "despite numerous demands," *id.*

4

¶ 61, and despite being provided with the dog's veterinary records, *id.* ¶ 62, unless Mr. Jackson would "consent to, and pay for, [the dog] to undergo major, cancer surgery, and other heroic efforts, even though Mr. Jackson, in consultation with [the dog's] veterinarian, decided against this radical treatment," *id.* ¶ 64. Plaintiffs allege that Mr. Jackson was compelled to agree to the cancer surgery, which was ultimately unsuccessful, and the dog died. *Id.* ¶ 65. According to Plaintiffs, "Mr. Jackson was denied the right to notice and hearing to contest the seizure, detention, terms of release, medical treatment, and fees associated with the seizure, detention, release and medical treatment of his pet." *Id.* ¶ 70.

Plaintiffs' Amended Complaint names as Defendants the Washington Humane Society; the District of Columbia; Jody Huckaby, individually and in her official capacity as Executive Director of WHS; Adam Parascandola, individually and in his official capacity as Director of Law Enforcement for WHS; Sonya Scnoor, individually and in her official capacity as the WHS law enforcement officer who seized and detained Ms. Daskalea's dog; Rosemary Vozobule, individually and in her official capacity as a WHS law enforcement officer who refused to return Ms. Daskalea's dog; Lindsay Gardewin, individually and in her official capacity as a WHS law enforcement officer who seized and refused to return Mr. Jackson's dog; and H.O. Boozer, individually and in her official capacity as the WHS law enforcement officer who seized and refused to return Dr. Norris's dog.[2] Significantly, Washington Humane Society is no longer a defendant to this action, as Judge

---

[2] Plaintiffs' Amended Complaint also names as defendants John Does 1-10, who are alleged WHS law enforcement officers, directors, and or members "whose identities are presently unknown to plaintiffs, and who illegally seized and detained the pets of the plaintiff class." Am. Compl. ¶ 17. Plaintiffs Daskalea, Norris, and Jackson bring their Amended Complaint on their own behalf and on behalf of an alleged class of "similarly situated pet owners living in the District of Colombia, and those persons who are not residents of the District, but who have had their animals seized by defendants, on or after August 4, 2000," the date of the Act's enactment.

John Garrett Penn determined that WHS is *non sui juris* and therefore granted WHS' motion to dismiss Plaintiffs' Amended Complaint as against WHS.  *See Daskalea v. Washington Humane Society*, 480 F. Supp. 2d 16, 22-24 (D.D.C. 2007).  The District of Columbia remains a Defendant to Plaintiffs' Amended Complaint.  *See* Am. Compl. ¶ 10.

Plaintiffs' Amended Complaint originally included eight Counts, three constitutional claims and five common law tort claims.  Count I asserted a general claim pursuant to 42 U.S.C. § 1983 that the various Defendants "deprived them of personal and property interests without due process of law, in violation of the fifth and fourteenth amendments to the Constitution," as well as their "right to be free from unreasonable searches and seizures pursuant to the fourth amendment to the Constitution," *id.* ¶¶ 71-74; Count II alleged that the Act is unconstitutional on its face and as customarily enforced, *id.* ¶¶ 75-78; and Count III alleged that Defendants' "application of the Act to the individually named plaintiffs violated their due process rights," *id.* ¶¶ 79-80; Count IV alleged destruction of property, *id.* ¶¶ 81-82; Count V alleged conversion, *id.* ¶¶ 83-85, Count VI alleged fraud with respect to each individually named Plaintiff and with respect to all Plaintiffs, *id.* ¶¶ 86-130; Count VII alleged negligent or intentional infliction of emotional distress, *id.* ¶¶ 131; and Count VIII alleged extortion, *id.* ¶¶ 132-141.

In his March 13, 2007 Memorandum Opinion, Judge Penn dismissed Plaintiffs' fraud claims, negligent or intentional infliction of emotional distress claims, and extortion claims (Counts VI, VII, and VIII of the Amended Complaint), and construed Plaintiffs' destruction of property claim as a

---

Am. Compl. ¶ 142.  Plaintiff's Motion for Class Certification, filed May 28, 2004 has been held in abeyance pending resolution of the instant motion for judgment on the pleadings and Plaintiffs' motion for partial summary judgment, which the Court addressed in a separate opinion.  *See* 11/20/07 Order, Docket No. [49].

civil claim for damage to personal property. *Daskalea*, 480 F. Supp. 2d at 36-39. Accordingly, Plaintiffs' remaining claims are their facial and as-applied constitutional claims, as well as their common law claims for damage to personal property and conversion. Significantly, none of these claims distinguishes between the various defendants named in Plaintiffs' Amended Complaint or indicates whether it is brought against the Individual Defendants in their official capacity, individual capacity, or both.

The Individual Defendants filed their Motion for Judgment on the Pleadings on January 11, 2008, Plaintiffs filed their Opposition on February 11, 2008, and the Individual Defendants filed their Reply in further support of their Motion on February 26, 2008.

## II.  LEGAL STANDARD

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) shall be granted if the moving party demonstrates that "no material fact is in dispute and that it is entitled to judgment as a matter of law." *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1485 (D.C. Cir. 1992) (internal quotation omitted). The standard for reviewing a motion for judgment on the pleadings is the same as that applied to a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6). *Dale v. Exec. Office of the President*, 164 F. Supp. 2d 22, 24 (D.D.C. 2001).

The Federal Rules of Civil Procedure only require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. ___, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *accord Erickson v. Pardus*, 551 U.S. ___, 127 S. Ct. 2197, 2200 (2007) (per curiam).

7

Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id*. at 1964-65; *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986).  Instead, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp.*, 127 S. Ct. at 1965 (citations omitted).  In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations.  *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994).  However, while the court must construe the Complaint in the Plaintiff's favor, it "need not accept inferences drawn by the plaintiff[] if such inferences are unsupported by the facts set out in the complaint."  *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

### III. DISCUSSION

The Individual Defendants' Motion for Judgment on the Pleadings argues that they are entitled to qualified immunity from Plaintiffs' claims for monetary damages because, in carrying out the actions complained of in the Amended Complaint, "they were state agents acting under color of law in objective good faith pursuant to a presumptively constitutional statute," and further argue that the Individual Defendants have a qualified privilege from civil suit on Plaintiffs' common law claims "because they were state agents acting under color of law and acted reasonably in the performance of their duties."  Indiv. Defs.' Mem. at 11.  The Court considers each argument in turn.

8

A.    *The Legal Framework for the Individual Defendants' Qualified Immunity Claim*

As the D.C. Circuit has explained, "[q]ualified immunity shields officials from liability for damages so long as their actions were objectively reasonable, as measured in light of the legal rules that were 'clearly established' at the time of their actions." *Kalka v. Hawk*, 215 F.3d 90, 94 (D.C. Cir. 2000) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982)). The Court evaluates the Individual Defendants' qualified immunity claim under the two-step analysis set forth in *Saucier v. Katz*, 533 U.S. 194, 200-02 (2001). First, the Court asks whether "the facts alleged show the [Individual Defendants'] conduct violated a constitutional right." *Id.* at 201. "[I]f a violation could be made out on a favorable view of the parties' submissions, the next . . . step is to ask whether the right was clearly established." *Id.* With respect to the second *Saucier* step,"[i]f existing law at the time of the violation 'did not put the [Individual Defendants] on notice that [their] conduct would be clearly unlawful, [] judgment based on qualified immunity is appropriate.'" *Lederman v. United States*, 291 F.3d 36, 46 (D.C. Cir. 2002) (quoting *Saucier*, 533 U.S. at 202).

Before turning to the actual application of *Saucier*'s two-step test, the Court addresses a number of preliminary issues raised by Plaintiffs in opposition to the Individual Defendants' invocation of qualified immunity. First, Plaintiffs assert that the Individual Defendants are not eligible for qualified immunity because they "are employees of the Washington Humane Society, a private, District of Columbia, corporation," and because qualified immunity is generally not available to private parties. Pls.' Opp'n at 2-4. While Plaintiffs are correct that qualified immunity is generally not available to private parties named as defendants in § 1983 suits, *see Wyatt v. Cole*, 504 U.S. 158, 167-68 (1992), based on the allegations in Plaintiffs' own Amended Complaint, Judge Penn's March 13, 2007 Memorandum Opinion, and the principles of judicial estoppel, the Court

9

finds that Individual Defendants are state actors, rather than private parties.

Plaintiffs' own Amended Complaint identifies the Individual Defendants as "government actors, performing government actions, under color of state (i.e., District of Columbia) law." Am. Compl. ¶ 25. Indeed, the Amended Complaint contains an entire section entitled "State Action and State Actor Allegations," in which Plaintiffs allege that "the individually named agents and officers [of WHS] perform traditional, core, police, prosecutorial, and judicial functions," and describe those functions in detail. *Id.* ¶¶ 25-30. Plaintiffs' Amended Complaint also describes each and every Individual Defendant as "a state actor, acting under color of law." *See id.* ¶¶ 11-16. In light of these repeated allegations, which are accepted as true for purposes of the Individual Defendants' motion for judgment on the pleadings, it is simply disingenuous for Plaintiffs to now argue that the Individual Defendants are private parties rather than state actors.

Further, in his March 13, 2007 Memorandum Opinion, Judge Penn conducted a detailed analysis and concluded that WHS and its employees named as Individual Defendants in Plaintiffs' Amended Complaint were state actors. *See Daskalea*, 480 F. Supp. 2d at 24-28. Judge Penn considered the "explicit powers and functions bestowed by the Government upon" WHS–the very functions that Plaintiffs alleged in their Amended Complaint–and determined that, in light of those functions, WHS must be considered a government actor because "when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations." *Id.* at 27 (quoting *San Francisco Arts & Ath. v. United States Olympic Comm.*, 483 U.S. 522, 549 (1987)). Judge Penn also noted that "[t]he notion that a local humane society performs a traditional, governmental function–law enforcement–has been recognized in other jurisdictions." *Id.* (citing cases). In sum,

10

Judge Penn "conclude[d] that the [WHS] performs a distinctive, traditional governmental function and that its employees were acting 'under color of state law' for purposes of 42 U.S.C. § 1983." *Id.* at 27-28.  This Court sees no reason to revisit Judge Penn's apparently correct conclusion.

Significantly, Judge Penn reached his conclusion that the Individual Defendants named in Plaintiffs' Amended Complaint were state actors for purposes of Plaintiffs' § 1983 claims after the Individual Defendants moved to dismiss Plaintiffs' Amended Complaint on the grounds that they were not state actors and were not acting under color of law.  *See id.* at 24-25.  In turn, Plaintiffs opposed the Individual Defendants' arguments in this respect, and were ultimately successful in persuading Judge Penn to reject the Individual Defendants' claims that they were not state actors or acting under color of state law.  Indiv. Defs.' Reply at 3 (citing Pls.' Opp'n to Mots. to Dismiss at 5).  Having successfully argued that the Individual Defendants were state actors, Plaintiffs are now judicially estopped from arguing that the Individual Defendants are private parties.  As the Supreme Court has explained:

> Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the [other] party. . . . *Davis v. Wakelee*, 156 U.S. 680, 689 [] (1895).  This rule, known as judicial estoppel, "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 [] (2000).

*Zedner v. United States*, 547 U.S. 489, 504 (2006) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)).  For all of the foregoing reasons, the Court rejects Plaintiffs about-face argument that the Individual Defendants are not state actors and therefore ineligible for qualified immunity.

Plaintiffs also argue that the Individual Defendants cannot invoke qualified immunity in this case because "Plaintiffs primary demand in this action is for injunctive and declaratory relief." Pls.'

Opp'n at 4.  Plaintiffs are correct that "[w]hile an assertion of qualified immunity may shield a government official from answering for his actions in a suit for damages, such immunity does not extend to suit seeking equitable relief." *Meredith v. Fed. Mine Safety & Health Review Comm'n*, 177 F.3d 1042, 1049 (D.C. Cir. 1999) (citing, *inter alia*, *Harlow*, 457 U.S. 800).  However, in addition to equitable relief, Plaintiffs' Amended Complaint seeks "[i]ndividual and class damages, jointly and severally against all defendants, in an amount to be determined by the jury." Am. Compl. at 30.  Thus, to the extent that Plaintiffs seek monetary damages from the Individual Defendants, the Individual Defendants may be entitled to qualified immunity against Plaintiffs' claims.

Plaintiffs' next preliminary argument is that the Individual Defendants are not entitled to qualified immunity insofar as they are named as Defendants in their official capacities.  *See* Pls.' Opp'n at 5-6.  The Individual Defendants do not dispute this point, and both parties are correct that qualified immunity does not apply to official capacity suits.  *See Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985).  Nevertheless, the Amended Complaint names each Individual Defendant personally, as well as in his or her official capacity.  *See* Am. Compl., Caption and ¶¶ 11-16.  Thus, to the extent the Individual Defendants are named in their personal capacities, they may be able to assert a qualified immunity defense.  *See Graham*, 473 U.S. at 166-67.

As the Supreme Court has noted, and Plaintiffs readily admit, "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 690 n.55 (1978); *see also* Pls.' Opp'n at 5-6 (quoting *Monell*).  The Individual Defendants draw on this point to argue that "the claims against the Individual Defendants in their official capacities fail as a matter of law because such official capacity claims are merely an impermissible attempt to sue WHS, which has

already been dismissed as a party by this Court." Indiv. Defs.' Reply at 5. The Individual

Defendants are, of course, correct that WHS is no longer a defendant to this action because it is *non*

*sui juris*. *See Daskalea*, 480 F. Supp. 2d at 22-24. Nevertheless, the Court is not required to dismiss

Plaintiffs' official-capacity claims against the Individual Defendants. The reason for Judge Penn's

conclusion that WHS is *non sui juris* is that it is a department within the District of Columbia

government that Congress has not authorized to sue and be sued in its own name. *See id.* at 22-23.

As such, the proper defendant for Plaintiffs' claims against WHS is the District of Columbia itself,

and Plaintiffs named the District of Columbia as a Defendant in their Amended Complaint.

Plaintiffs allege that the Individual Defendants are state actors who acted on behalf of the District

of Columbia in enforcing its animal protection laws. As such, to the extent that the Individual

Defendants are named in their official capacities, those claims are effectively claims against the

District of Columbia. The Court therefore rejects Defendants' assertion that Plaintiffs' "claims

against the Individual Defendants in their official capacities fail as a matter of law." Indiv. Defs.'

Reply at 5.

    B.    *The Individual Defendants Sued in Their Individual Capacities Have Only Demonstrated their Entitlement to Limited Qualified Immunity*

As noted above, Plaintiffs' constitutional claims allege: (1) that the Individual Defendants

deprived Plaintiffs "of their personal and property rights by illegally seizing their pets, illegally

detaining [their pets], forcibly sterilizing pets, extorting unjustified fees and expenses from owners,

[and] compelling unwanted medical treatment . . . against the will of the plaintiff pet owners," in

violation of the Fourth, Fifth, and Fourteenth Amendments, Am. Compl. ¶¶ 71-74 (Count I); (2) that

the Act, "is unconstitutional because as written, and as customarily enforced, it fails to provide

animal owners with a meaningful right to contest the seizure, detention, and terms of release of their pets, prior [to] final action which permanently affects a pet owner's rights," *id.* ¶¶ 75-78 (Count II); and (3) that Defendants' violated each Plaintiffs' individual due process rights in applying the Act to that Plaintiff, i.e., "by illegally seizing and detaining their pets, illegally refusing to return the animals to them, failing to provide notice and a meaningful right to be heard, and taking actions which permanently affected [Plaintiffs'] property rights without due process of law," *id.* ¶¶ 79-80 (Count III).

In their Motion for Judgment on the Pleadings, the Individual Defendants argue that they are entitled to qualified immunity from Plaintiffs' constitutional claims because–they assert–"[t]he seizure of Plaintiffs' property and the alleged deprivation of due process were objectively reasonable under the D.C. Code as the Individual Defendants were acting pursuant to a presumptively constitutional statute."  Indiv. Defs.' Mem. at 5.  The Court turns now to considering the merits of this assertion, under the two-step framework set forth in *Saucier*.

The first step of *Saucier* asks whether the facts alleged demonstrate that the Individual Defendants' conduct violated Plaintiffs' constitutional rights.  *See* 533 U.S. at 201.  Although the Individual Defendants "reject Plaintiffs' claims that their constitutional rights were violated," for purposes of their qualified immunity motion, the Individual Defendants "do not dispute that Plaintiffs have stated a valid claim for relief on Counts I, II, and III and thus have satisfied *Saucier*'s first step." Indiv. Defs.' Mem. at 5-6.  Indeed, Judge Penn's March 13, 2007 Memorandum Opinion concluded that Counts I, II, and III of Plaintiffs' Amended Complaint state claims upon which relief could be granted.  *See Daskalea*, 480 F. Supp. 2d at 24-36.  As a result, and in light of the Individual Defendants' concession, the Court accepts–for purposes of the Individual Defendants' qualified

immunity motion–that "[t]aken in the light must favorable to the party asserting the injury, [] the facts alleged show the [Individual Defendants'] conduct violated a constitutional right." *Saucier*, 533 U.S. at 201.  In so doing, the Court makes no determinations as to the merits of Plaintiffs' constitutional claims, which will be the subjects of additional briefing and discovery.

Having resolved the "threshold question" of the *Saucier* inquiry, the next "step is to ask whether the [constitutional] right was clearly established." *Id.*  This involves considering whether "existing law at the time of the violation [] 'put the [Individual Defendants] on notice that [their] conduct would be clearly unlawful.'" *Lederman*, 291 F.3d at 46 (quoting *Saucier*, 533 U.S. at 202). For their part, the Individual Defendants stress the fact that they seized Plaintiffs' pets pursuant to the Act, and argue that "no reasonable official would know that his actions violated constitutional norms when he performed his duty in accordance with a presumptively valid statute." Indiv. Defs.' Mem. at 6.  The Court agrees with Defendants that, in light of the authority conveyed on WHS humane officers by the Act, a reasonable WHS officer could have believed that he or she acted reasonably in seizing a neglected or abused pet and in caring for that pet until its owner could take charge of it.

As the Supreme Court has noted in a different context:

> The enactment of a law forecloses speculation by enforcement officers concerning its constitutionality–with the possible exception of a law so grossly and flagrantly unconstitutional that any person would be bound to see its flaws.  Society would be ill-served if its [law enforcement] officers took it upon themselves to determine which laws are and which are not constitutionally entitled to enforcement.

*Michigan v. DeFillippo*, 433 U.S. 31, 38 (1979); *see also Lederman*, 291 F.3d at 47 ("An officer who reasonably relies on the legislature's determination that a statute is constitutional should be shielded from personal liability.") (quoting *Grossman v. Portland*, 33 F.3d 1200, 1210 (9th Cir. 1994)).  Here,

15

the Act authorizes WHS humane officers to "take possession of any animal to protect it from neglect or cruelty," and requires "[t]he person taking possession of the animal or animals, [to] use reasonable diligence to give notice thereof to the owner of animals" and to "properly care for the animals until the owner shall take charge of the animals. . . ." D.C. Code § 22-1004(b)(1). Thus, to the extent that the Individual Defendants are alleged to have seized Plaintiffs' pets, they arguably acted pursuant to a validly enacted statute.

For their part, Plaintiffs argue that "[a] review of the relevant case law reveals that courts are unanimous in holding that humane society enabling statutes which do not provide notice and a hearing to pet owners violate due process." Pls.' Opp'n at 7 (citing cases). Plaintiffs are correct that courts in a variety of jurisdictions have found unconstitutional certain statutes that fail to provide an opportunity to be heard in connection with the seizure of pet prior to final action affecting the pet owners' rights. *See, e.g., DiCesare v. Stuart*, 12 F.3d 973 (10th Cir. 1993); *Porter v. DiBlasio*, 93 F.3d 301 (7th Cir. 1996). Nevertheless, the cases Plaintiffs cite do not demonstrate that the Act at issue in *this* case, which was validly enacted by the D.C. Council, was "so grossly and flagrantly unconstitutional that any person would be bound to see its flaws." *DeFillippo*, 433 U.S. at 38. Significantly, Plaintiffs do not proffer any case law indicating that a court in the District of Columbia has found the Act or its predecessors to be unconstitutional.[3] *See Lederman*, 291 F.3d at 48 ("in

---

[3] The Individual Defendants actually argue the direct opposite, asserting that "the D.C. Courts upheld the Act's precursor statute against challenges similar to the ones levied here." Indiv. Defs.' Mem. at 7 (citing *Tuck v. United States*, 467 A.2d 727 (D.C. 1983) and *Tuck v. United States*, 477 A.2d 1115 (D.C. 1984)). While the two *Tuck* cases did consider the constitutionality of a predecessor to the Act, D.C. Code § 22-801, they do not support the inference the Individual Defendants suggest: that the seizure provision of the Act that Plaintiffs challenge in this case has previously been found constitutional. To the contrary, the first *Tuck* opinion found that then-D.C. Code § 22-801 was not unconstitutionally vague in prohibiting "unnecessary cruelty" to animals and criminalizing the "unnecessary fail[ure] to provide

evaluating what constitutes 'clearly established statutory or constitutional rights of which a reasonable person would have known,' [] we must look not just to federal case law, but also to the law of the highest court in the state in which the case arose") (quoting *Harlow*, 457 U.S. at 818). In short, this Court "would be hard pressed to conclude, from the standpoint of our federal system, that a [WHS humane officer] must *sua sponte* cease to enforce the duly enacted [animal protection] laws of her state, without regard for the expressions of the legislature." *Swanson v. Powers*, 937 F.2d 965, 969-70 (4th Cir. 1991).

Furthermore, in the cases that Plaintiffs cite, courts in other jurisdictions have evaluated whether particular statutes (not the Act challenged in this case) comport with the due process requirements of notice and an opportunity to be heard prior to final action affecting one's rights. *See Propert v. District of Columbia*, 948 F.2d 1327 (D.C. Cir. 1991); *Mullane v. Central Hanover Bank & Trust Co.*, 399 U.S. 306 (1950); *Mathews v. Eldridge*, 424 U.S. 319 (1976). The detailed and voluminous case law regarding the application of the due process concept of "notice and an opportunity to be heard" reveals that the concepts is a highly legalistic one, and not one that this Court believes the average WHS officer would be intimately familiar with. As such, the Court concludes the cases Plaintiffs cite do not demonstrate that a reasonable WHS officer would understand the Act to be "grossly and flagrantly unconstitutional." *Saucier*, 443 U.S. at 38. The

---

[animals] with proper food, drink, shelter, or protection from the weather." *See* 467 A.2d 727; D.C. Code § 22-801 (1981). The second *Tuck* opinion found that police officers were objectively justified in entering a criminal defendant's pet store and seizing an animal without a warrant. *See* 477 A.2d 1115. Significantly, the second *Tuck* opinion involved a motion to suppress evidence seized without a warrant, and not a constitutional challenge to the warrantless nature of the seizures authorized by now-D.C. Code § 22-1004(b)(1). As such, neither *Tuck* opinion actually supports the Individual Defendants' claims that they acted reasonably in seizing Plaintiffs' pets pursuant to D.C. Code § 22-1004(b)(1).

Court therefore agrees with the Individual Defendants that, insofar as they are alleged to have enforced the Act as it is written, they are entitled to limited qualified immunity from the personal capacity claims for damages in Counts I, II, and III of the Amended Complaint.  Accordingly, the Court shall grant-in-part the Individual Defendants' motion for judgment on the pleadings, finding that they are entitled to qualified immunity against Plaintiffs' claims that arise out of their alleged enforcement of the Act as written.

The Court cannot, however, reach an across-the-board conclusion regarding the Individual Defendants' assertion of qualified immunity based on the Individual Defendants' current briefing. As noted above, each of Plaintiffs' constitutional claims challenges not only the actual seizure of Plaintiffs' pets but also the Individual Defendants' alleged actions *after* seizing Plaintiffs pets, i.e., the allegedly illegal detention of Plaintiffs' pets, the forced sterilization of Ms. Daskalea's dog, the requirement that Plaintiffs pay allegedly "unjustified fees" in order to retrieve their pets, and the requirement that Mr. Jackson agree to cancer surgery in order to reclaim his dog.  *See* Am. Compl. ¶¶ 71, 75-76, 80.  The Act is silent regarding such requirements, and therefore does not explicitly authorize WHS officers to engage in the types of actions that Plaintiffs allege in their Amended Complaint.  *See* D.C. Code § 22-1001 *et seq.*  The Court therefore cannot determine, based on the Act alone, that the Individual Defendants acted reasonably in carrying out their alleged actions *after* they seized Plaintiffs' pets.  Significantly, the Individual Defendants' qualified immunity motion makes no attempt to address whether their alleged actions *after* seizing Plaintiffs' pets show a violation of Plaintiffs' constitutional rights and, if so, whether the allegedly violated constitutional rights were clearly established.  As such, the Court has no basis on which to judge the Individual Defendants' invocation of qualified immunity insofar as Plaintiffs' constitutional claims encompass

the Individual Defendants' alleged actions after seizing Plaintiffs' pets.

Accordingly, the Court shall deny-in-part without prejudice the Individual Defendants' motion for judgment on the pleadings, finding that they have not established that they are entitled to qualified immunity in connection with their alleged actions *after* seizing Plaintiffs' pets.  In the event that the Individual Defendants believe they are entitled to qualified immunity with respect to those alleged actions, they must properly and thoroughly brief the issue under the *Saucier* standard.

C.      *The Individual Defendants' Assertion of Qualified Privilege Against Plaintiffs' Common Law Claims is Largely Inapposite*

In addition to asserting that they are entitled to qualified immunity against Plaintiffs' constitutional claims, the Individual Defendants' motion for judgment on the pleadings argues that judgment must be entered in their favor on Plaintiffs' common law claims because they are entitled to a qualified privilege from suit "as state agents acting reasonably within the scope of their duties." Indiv. Defs.' Mem. at 9.  The Individual Defendants base this assertion on the qualified privilege that law enforcement officers enjoy "from suit for tort claims arising out of a lawful arrest so long as the amount of force used was reasonable." *Id.* at 10.  The Individual Defendants are correct that, under District of Columbia law,  "[i]t is well established that a police officer has a qualified privilege to use reasonable force to effect an arrest, provided that the means employed are not 'in excess of those which the actor reasonably believes to be necessary.'" *Kotsch v. District of Columbia*, 924 A.2d 1040, 1047 (D.C. 2007) (quoting *Etheredge v. District of Columbia*, 635 A.3d 908, 916 (D.C. 1993)); *see also Jackson v. District of Columbia*, 412 A.2d 948, 856 (D.C. 1980).  Even if this principle applies to the Individual Defendants in this case, however, it is of limited relevance in light of the actual nature of Plaintiffs' common law tort allegations.

19

The Individual Defendants do not proffer any case law demonstrating that the qualified privilege bestowed upon law enforcement officers against tort claims arising out of the use of reasonable force in effecting an arrest is applicable to humane society officers seizing an allegedly neglected or abused pet.   For their part, Plaintiffs do not challenge that the principle may be translated to the factual situation at issue here, but question whether some of the Individual Defendants are entitled to invoke a law enforcement privilege.  *See* Pls.' Opp'n at 9-10.  The Court does not resolve these questions at this time because, regardless of whether a qualified privilege might in theory extend to humane society officers in connection with alleged damage caused by the seizure of an allegedly abused or neglected pet, Plaintiffs' remaining tort claims in this action do not arise solely out of the alleged seizures of their pets.

Plaintiffs' remaining common law tort claims are for damage to personal property and conversion.  *See Daskalea*, 480 F. Supp. 2d at 36-39.  Plaintiffs' damage to personal property claim relates solely to the alleged forced sterilization of Ms. Daskalea's dog and alleged forced cancer surgery on Mr. Jackson's dog.  Am. Compl. ¶¶ 81-82.  As such, even if the Individual Defendants might be entitled to invoke a qualified privilege in connection with damage occasioned by the seizure of Ms. Daskalea's and Mr. Jackson's dogs, that privilege is inapposite to Plaintiffs' damage to personal property claim because it relates to damage allegedly incurred *after* the pets were seized. Further, Plaintiffs' conversion claim alleges that Defendants "willfully and intentionally and/or negligently or carelessly, seized and converted plaintiffs' pets."   Am. Compl. ¶ 84.  In his March 13, 2007 Memorandum Opinion, Judge Penn interpreted Plaintiffs' conversion claim as encompassing Plaintiffs' allegations regarding the forced sterilization and medical treatment of their pets.  *Daskalea*, 480 F. Supp. 2d at 36-37.  As such, even if the Individual Defendants might be

entitled to a qualified privilege in connection with their actual seizures of Plaintiffs' pets, they have not demonstrated that that privilege would extend to the actions they allegedly took *after* seizing Plaintiffs' pets.[4]

The Court does not agree with Plaintiffs' suggestion that the Individual Defendants may only invoke a claim of qualified privilege as a defense at trial; as the Individual Defendants correctly note, the D.C. Court of Appeals has considered the qualified privilege available to law enforcement officers appropriate grounds for summary judgment. *See Jackson*, 412 A.2d at 956; *Kotsch*, 924 A.2d at 1047-50 (considering the qualified privilege in the context of a summary judgment motion but concluding that genuine issues of material fact precluded the entry of summary judgment in that case). In the event that the Individual Defendants believe that they are entitled to invoke a qualified privilege against Plaintiffs' common law tort claims, they may do so before trial. However, to do so, they must demonstrate through proper and through briefing and legal analysis that the qualified privilege available to law enforcement officers is applicable to the conduct actually alleged in Plaintiffs' damage to personal property and conversion claims. As the Individual Defendants' current briefing fails to carry this burden, the Court shall deny without prejudice the Individual Defendants' motion for judgment on the pleadings insofar as it argues that the Individual Defendants are entitled to a qualified privilege against Plaintiffs' common law tort claims.

---

[4] In addition to arguing that they are entitled to a qualified privilege against Plaintiffs' conversion claim, the Individual Defendants appear to suggest that the conversion claim fails as a matter of law because the Individual Defendants could not have exercised *unlawful* dominion or control over Plaintiffs' pets in seizing them pursuant to the Act. *See* Indiv. Defs.' Mem. at 9-10 (citing *Blanken v. Harris, Upham & Co.*, 359 A.2d 281, 283 (D.C. 1976)). This claim is likewise unavailing because, as discussed above, Plaintiffs' conversion claim relates not only to the seizure of their pets, but also to the actions allegedly taken after their seizures, and the Act is silent as to whether such actions are authorized by law.

## IV.  CONCLUSION

For the foregoing reasons, the Court shall GRANT-IN-PART and DENY-IN-PART WITHOUT PREJUDICE the Individual Defendants' [54] Motion for Judgment on the Pleadings. Specifically, the Court concludes that the Individual Defendants are entitled to qualified immunity against Plaintiffs' personal-capacity constitutional claims for damages insofar as those claims relate to the Individual Defendants' alleged enforcement of the District of Columbia Freedom from Cruelty to Animals Protection Act of 2000, D.C. Code § 22-1001 *et seq.*, as written.  The Court reaches no conclusions regarding the Individual Defendants' entitlement to qualified immunity in connection with the actions they are alleged to have taken *after* seizing Plaintiffs' pets that are encompassed in Plaintiffs' constitutional claims or the Individual Defendants' entitlement to a qualified privilege against Plaintiffs' common law tort claims for damage to personal property and conversion, as the Individual Defendants' briefing on those issues is insufficient to allow the Court to reach a conclusion.  In the event that the Individual Defendants believe they are entitled to such qualified immunity or qualified privilege, they must file a motion that properly and thoroughly briefs those issues, and must do so no later than September 30, 2008.  If no such motion is filed, the parties shall file a Joint Status Report on September 30, 2008 which addresses whether briefing on Plaintiffs' motion for class certification (currently held in abeyance) should be completed and/or whether an Initial Scheduling Conference should be set so that the Court may proceed to enter a scheduling order for discovery in this matter. An appropriate Order accompanies this Memorandum Opinion.

Date:   September 9, 2008

                                                        */s/*

                                                  COLLEEN KOLLAR-KOTELLY
                                                  United States District Judge