# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SUNDAY DASKALEA, *et al.*,

    Plaintiffs,

      v.

WASHINGTON HUMANE SOCIETY, *et al.*,

    Defendants.

Civil Action No. 03-2074 (CKK)

## MEMORANDUM OPINION
(May 2, 2010)

Plaintiffs are self-described pet owners in the District of Columbia who allege that their pets were seized, detained, and damaged by Defendants without due process of the law. Presently at issue is Plaintiffs' allegation in Count II of their Amended Complaint that the District of Columbia's Freedom from Cruelty to Animal Protection Act, D.C. Code § 22-1001 *et seq.* (hereinafter, the "Act"), is facially unconstitutional because it fails to provide animal owners with a meaningful right to contest the seizure, detention, and terms of release of their pets, prior to final action. The challenged provisions of the Act, however, were recently amended (subsequent to the filing of Plaintiffs' lawsuit) by passage of D.C. Act 17-493, entitled the "Animal Protection Amendment Act of 2008" (hereinafter, the "2008 Amendment"). The Court therefore ordered the parties to submit supplemental briefing addressing the impact of the recent amendments to the Act on Plaintiffs' facial challenge and, specifically, whether Plaintiffs' claim of facial unconstitutionality is now moot. The parties have since filed the required briefing, and the Court is now tasked with determining whether Plaintiffs' facial challenge is moot in light of the new legislation. Upon consideration of the parties' supplemental memoranda, relevant case

law, statutory and regulatory authority, as well as the record of this case as a whole, the Court finds that Plaintiffs' facial challenge to the constitutionality of the Act has in fact been rendered moot by the 2008 Amendment. Accordingly, for the reasons set forth below, the Court shall DISMISS Count II of the Amended Complaint as MOOT insofar as it asserts a facial challenge to the constitutionality of the Act.

## I. BACKGROUND

The Court assumes familiarity with the factual background of this case, which is set forth in detail in this Court's previous opinions and is incorporated herein. *See Daskalea v. Washington Humane Society*, 577 F. Supp. 2d 82 (D.D.C. 2008) (hereinafter, "*Daskalea I*"); *Daskelea v. Washington Humane Society*, 577 F. Supp. 90 (D.D.C. 2008). Accordingly, the Court addresses only such facts as are necessary for resolution of the issues currently before the Court.

Plaintiffs Sunday Daskalea, Frances Norris, and Willie Jackson allege that they "are pet owners in the District of Columbia who have had their pets seized, detained and damaged without due process of law." Am. Compl. ¶ 1. Plaintiffs' Amended Complaint names as Defendants the District of Columbia (hereinafter, "D.C." or the "District"); Jody Huckaby, individually and in her official capacity as Executive Director of the Washington Humane Society ("WHS"); Adam Parascandola, individually and in his official capacity as Director of Law Enforcement for WHS; Sonya Scnoor, individually and in her official capacity as the WHS law enforcement officer who seized and detained Ms. Daskalea's dog; Rosemary Vozobule, individually and in her official capacity as a WHS law enforcement officer who refused to return Ms. Daskalea's dog; Lindsay Gardewin, individually and in her official capacity as a WHS law

enforcement officer who seized and refused to return Mr. Jackson's dog; and H.O. Boozer, individually and in her official capacity as the WHS law enforcement officer who seized and refused to return Dr. Norris's dog (collectively, the "Individual Defendants").[1]

Plaintiffs' Amended Complaint includes both constitutional challenges to the Act and common law claims regarding the alleged seizure, detention, and damaging of Plaintiffs' pets. *See generally* Am. Compl. In particular, Count II alleges that the Act is unconstitutional on its face and as customarily enforced, and Count III alleges that Defendants' application of the Act to the individual Plaintiffs violated their due process rights. *Id.* ¶¶ 75-80. Both Counts II and III remain extant at this time. As explained above, this Memorandum Opinion focuses solely on Plaintiffs' facial challenge to the constitutionality of the Act as set forth in Count II of the Amended Complaint.

Specifically, Plaintiffs contend that the Act "is unconstitutional because as written . . . it fails to provide animal owners with a meaningful right to contest the seizure, detention, and terms of release of their pets, prior [to] final action which permanently affects a pet owner's

---

[1] Plaintiffs' Amended Complaint originally named the Washington Humane Society as a Defendant in this action as well. WHS, however, is no longer a defendant in this action, as Judge John Garrett Penn — to whom this case was previously assigned — determined that WHS is *non sui juris* and therefore granted WHS' motion to dismiss Plaintiffs' Amended Complaint as against WHS. *See Daskalea v. Washington Humane Society*, 480 F. Supp. 2d 16, 22-24 (D.D.C. 2007). In addition, Plaintiffs' Amended Complaint names as defendants John Does 1-10, who are alleged WHS law enforcement officers, directors, and or members "whose identities are presently unknown to plaintiffs, and who illegally seized and detained the pets of the plaintiff class." Am. Compl. ¶ 17. Plaintiffs Daskalea, Norris, and Jackson bring their Amended Complaint on their own behalf and on behalf of an alleged class of "similarly situated pet owners living in the District of Colombia, and those persons who are not residents of the District, but who have had their animals seized by defendants, on or after August 4, 2000," the date of the Act's enactment. Am. Compl. ¶ 142. Plaintiff's Motion for Class Certification, filed May 28, 2004, has been held in abeyance pending resolution of the parties' motions with respect to Plaintiffs' facial challenge. *See* 11/20/07 Order, Docket No. [49].

rights." *Id.* ¶ 75. Plaintiffs focus on D.C. Code § 22-1004, which is entitled "Arrests without warrant authorized; notice to owner." At the time the Plaintiffs' lawsuit was filed and the complained-of events allegedly occurred, section 22-1004 consisted of the following two paragraphs — (a) & (b) — reprinted in full below:

(a) Any person found violating the laws in relation to cruelty to animals may be arrested and held without a warrant . . . . The person making the arrest or the humane officer taking possession of an animal shall have a lien on said animals for the expense of such care and provisions.

(b)(1) A humane officer of the Washington Humane Society may take possession of any animal to protect it from neglect or cruelty. The person taking possession of the animal or animals, shall use reasonable diligence to give notice thereof to the owner of animals found in the charge or custody of [a] person arrested, and shall properly care for the animals until the owner shall take charge of the animals; provided that, the owner shall take charge of the animals within 20 days from the date of the notice.

(2) If the owner or custodian of the animal or animals fails to respond after 20 days, the animal or animals shall become the property of the Washington Humane Society and the Washington Humane Society shall have the authority to:

(A) Place the animal or animals up for adoption in a suitable home;

(B) Retain the animal or animals; or

(C) Humanely destroy the animal or animals.

D.C. Code § 22-1004.

Based upon the statutory language existing at the time of filing, Plaintiffs allege that the Act is unconstitutional on its face because of "its complete failure to provide notice and a meaningful opportunity for pet owners to contest the seizure, detention, terms of release and treatment of their pets, and the fees and terms associated therewith." Am. Compl. ¶ 76. In particular, Plaintiffs challenge the Act's alleged failure to

(1) establish reasonable and articulable standards for the seizure of pets; (2) to

4

provide reasonable notice and a meaningful opportunity to be heard to contest the seizure, detention, release terms and treatment of pets; (3) to set reasonable and articulable standards for the release of seized pets; (4) to prevent involuntary medical treatment of pets; and (5) [to prevent] the imposition of arbitrary and capricious fines, penalties and fees.

*Id.* ¶ 76.

Plaintiffs initially moved for partial summary judgment on their facial challenge in late 2007, shortly after the case was reassigned to this Court. *See* Pls.' Mot. for Partial Summ. J., Docket No. [42]. The Court denied that motion without prejudice, finding that the parties' briefing in connection with Plaintiffs' motion was "simply insufficient to allow the Court to resolve that question." *Daskalea I*, 577 F. Supp. 2d at 83. Plaintiffs were granted leave to file a renewed partial motion for summary judgment on their facial challenge, which they did in September of 2008. *See* Pls.' Renewed Mot. for Partial Summ. J. as to the Facial Unconstitutionality of Count II of the Am. Compl, Docket No. [64]. The motion was opposed by both the District and the Individual Defendants. As is relevant here, in filing its Opposition to Plaintiffs' motion, the District notified the Court for the first time that the D.C. Council had passed and the Mayor had signed D.C. Act 17-493, known as the "Animal Protection Amendment Act of 2008." *See* District's Opp'n, Docket No. [65], at 2. The District explained that the 2008 Amendment, which was at that time pending before Congress as part of the legislative review process, amended D.C. Code § 22-1004 — i.e., the very statutory provision upon which Plaintiffs' facial challenge focuses. *Id.* at 2-3. Specifically, the 2008 Amendment, in relevant part, added a new substantive subsection (c) to D.C. Code § 22-1004, as follows:

(c)(1) The Mayor shall establish by rulemaking a notice and hearing process for the owner of the animal to contest the seizure, detention, and terms of release and treatment of the animal, the allegation of cruelty, abandonment, or neglect, and the imposition of the lien and costs assessed for caring and providing for the animal.

(2) Within 30 days of December 5, 2008, the proposed rules shall be submitted to the Council for a 45-day period of review, excluding weekends, legal holidays, and days of Council recess. If the Council does not approve or disapprove of the proposed rules, by resolution, within the 45-day review period, the rules shall be deemed approved.

D.C. Code § 22-1004(c). Based on the passage of the 2008 Amendment, the District argued that "Plaintiffs' facial invalidity claims are now moot, because the Council has passed new legislation addressing the specific problems alleged by plaintiffs." District's Opp'n, Docket No. [65], at 4-7.[2]

Plaintiffs disagreed, arguing in Reply that their facial challenge to the Act had not been rendered moot by the passage of the 2008 Amendment. *See* Pls.' Reply, Docket No. [67], at 2-4. Plaintiffs advanced two arguments in support of this position. First, Plaintiffs argued that until the 2008 Amendment took effect and until the implementing regulations were in fact promulgated and approved, the District could not demonstrate that the alleged violations were unlikely to recur. *See id.* at 2 ("The interim event relied upon by the District is the proposed enactment of the [2008 Amendment]. This statutory revision *may*, sometime in 2009, or later, become law. If it does, the Mayor *may* begin the process of rulemaking, and constitutionally adequate procedural rules may emerge. However, unless and until these events happen, pet owners are today, and for a considerable period of time in the future, subject to denial of due

───────────────

[2] The Individual Defendants incorporated the District's argument on this point in their opposition to Plaintiffs' motion, which was filed separately. *See* Indiv. Def.'s Mem. in Opp'n, Docket No. [66], at 2, n. 2.

process.") (emphasis in original).  Second, Plaintiffs argued that because their suit requested

damages as well as injunctive and declaratory relief, Plaintiffs' facial challenge remained viable.

*Id.* at 3.

Shortly after briefing on Plaintiffs' renewed partial motion for summary judgment was

complete, the District filed a Notice advising the Court that the 2008 Amendment had survived

Congressional review and had therefore become law, effective December 5, 2008.  *See* District's

Not., Docket No. [68].  The District also advised that the Mayor had, pursuant to the newly

amended section 22-1004(c), submitted notice of emergency and proposed rulemaking to the

D.C. Council, setting forth a "notice and hearing process for the owner of [a seized] animal."  *See*

*id.* & Att. 1 (copy of Notice of Emergency and Proposed Rulemaking).  The District later notified

the Court that those proposed rules were approved by the D.C. Council without any substantive

modification on March 3, 2009.  *See* Status Report, Docket No. [69]; *see also* 56 D.C. Reg. 2104

(Mar. 3, 2009).  The final rules, which are now codified at D.C. Mun. Reg. tit. 24, § 1500 *et seq.*

(2009), amend Title 24 of the District of Columbia Municipal Regulations to add a new chapter,

Chapter 15, entitled "Hearing Procedures for Washington Humane Society."  As set forth therein,

"[t]he purpose of the[] rules is to establish a notice and hearing process for the owner of an

animal seized pursuant to [D.C. Code § 22-1004(b)(1)] . . . to contest the seizure, detention, and

terms of release; the treatment of the animal; any allegation of cruelty, abandonment, or neglect;

and the imposition of any lien and costs assessed for caring and providing for the animal."  D.C.

Mun. Reg. tit. 24, § 1500.1.

In light of this development, the Court issued an Order denying Plaintiffs' renewed

motion for partial summary judgment without prejudice and directing the parties "to submit

supplemental briefing addressing whether Plaintiffs' facial challenge to the District's animal cruelty statute is now moot," given that both the 2008 Amendment and its implementing regulations had since gone into effect.  7/8/09 Order, Docket No. [70], at 3.  The Court advised the parties that once it had ruled on the question of mootness, it would permit Plaintiffs to re-file their motion for partial summary judgment if their claim remained viable.  *Id.*  In addition, in order to guide the parties' discussion of the mootness inquiry on re-briefing, the Court noted that,

> although Plaintiffs' briefing on this point is unclear, the Court has understood that Plaintiffs are seeking only injunctive and declaratory relief (and not monetary relief) based on their claim of facial unconstitutionality — that is, that any claim for damages relating to the alleged unconstitutionality of the statute is asserted in conjunction with Plaintiffs' as-applied claim in Count III of the Amended Complaint and not in conjunction with Plaintiffs' facial challenge in Count II.  Thus, although Plaintiffs correctly note that their "suit is for damages, as well as for injunctive and declaratory relief," *see* Pls.' Reply at 3, the Court understands that their specific *claim* of facial unconstitutionality seeks only injunctive and declaratory relief.  Consequently, the fact that Plaintiffs request damages is not relevant to the question of whether Plaintiffs' facial challenge is now moot.  To the extent that Plaintiffs assert to the contrary, however, Plaintiffs must provide the Court with a legal basis for their assertion that they are entitled to monetary damages based upon their facial unconstitutionality claim.

*Id.* at 3-4 (emphasis in original).

This matter now comes before the Court on the filing of the parties' supplemental briefs addressing the question of mootness.  Pursuant to the schedule proposed by the parties and adopted by the Court, Plaintiffs filed an opening Supplemental Memorandum on the Issues of Mootness and Damages.  Pls.' Supp. Mem., Docket No. [72].  The Individual Defendants and the District each filed an Opposition to Plaintiffs' Supplemental Memorandum.  Ind. Defs.' Opp'n, Docket No. [73]; District's Opp'n, Docket No. [74].  Plaintiffs declined to file any reply.  Accordingly, briefing is now complete, and the Court turns to consider whether Plaintiffs' facial

challenge to the Act, as set forth in Count II of the Amended Complaint, is now moot.

## II. LEGAL STANDARD

*A.        Standard for Dismissal Pursuant to Rule 12(b)(1) for Lack of Subject Matter*

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) (stating that a court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority"). A court must therefore dismiss a case or claim when it lacks subject matter jurisdiction pursuant to Rule 12(b)(1). In so doing, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coalition for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted); *see also Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) ("[T]he district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction."). A court must, however, accept as true all factual allegations contained in the complaint and afford the plaintiff the benefit of all favorable inferences that can be drawn from the alleged facts. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). Nonetheless, in spite of the favorable inferences that a plaintiff receives on a motion to dismiss, it remains the plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence. *Am. Farm Bureau v. Envtl. Prot. Agency*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000).

*B.      Mootness*

"Article III of the Constitution restricts the federal courts to deciding only 'actual,

ongoing controversies,' and a federal court has no 'power to render advisory opinions [or] . . .

decide questions that cannot affect the rights of litigants in the case before them.'"  *Nat'l Black*

*Police Ass'n v. D.C.*, 108 F.3d 346, 349 (D.C. Cir. 1997) (internal citations omitted) (quoting

*Honig v. Doe*, 484 U.S. 305, 317 (1988) and *Preiser v. Newkirk*, 422 U.S. 295, 401 (1975)).  The

case or controversy requirement "means that, throughout the litigation, the plaintiff must have

suffered, or be threatened with, an actual injury traceable to the defendant and likely to be

redressed by a favorable judicial decision."  *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (internal

quotation marks omitted).  In other words, "a live controversy must exist at all stages of review."

*Nat'l Black Police Ass'n*, 108 F.3d at 349.  "Hence, '[e]ven where litigation poses a live

controversy when filed, . . . [this] court [must] refrain from deciding it if 'events have so

transpired that the decision will neither presently affect the parties' rights nor have a

more-than-speculative chance of affecting them in the future.'"  *Id.* (quoting *Clarke v. United*

*States*, 915 F.2d 699, 701 (D.C. Cir. 1990) (en banc)); *see also 21st Century Telesis Joint*

*Venture v. Fed. Commc'n Comm'n*, 318 F.3d 192, 198 (D.C. Cir. 2003) (explaining that a court

must evaluate mootness "through all stages" of the litigation to ensure that a live controversy

remains).

Where, as here, the intervening event that arguably ends the live controversy between

Plaintiffs and Defendants is the District's enactment of new legislative, "voluntary cessation

analysis governs [the Court's] mootness inquiry."  *See Nat'l Black Police Ass'n*, 108 F.3d at 349.

"Although generally voluntary cessation of challenged activity does not moot a case, a court may

10

conclude that voluntary cessation has rendered a case moot if the party urging mootness demonstrates that (1) 'there is no reasonable expectation that the alleged violation will recur,' and (2) 'interim relief or events have completely or irrevocably eradicated the effects of the alleged violation.'" *Id.* (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)).

### III. DISCUSSION

Plaintiffs concede that the first requirement of the voluntary cessation test set forth above is satisfied in this case, *see* Pls.' Supp. Mem. at 3, n. 2 ("Plaintiffs agree that the District['s] enactment of the amended statute satisfies the first prong of the [*County of Los Angeles v.* ] *Davis* test . . . ."), and for good reason. As the D.C. Circuit has held, where the alleged violation has been mooted by the passage of legislation, "the mere power to reenact a challenged law is not a sufficient basis on which a court can conclude that a reasonable expectation of recurrence exists. Rather, there must be evidence indicating that the challenged law likely will be reenacted." *Nat'l Black Police Ass'n*, 108 F.3d at 349. In the case at hand, there is no evidence that the District will repeal the 2008 Amendment and its implementing regulations. "The Council has not 'announced . . . such an intention,' and indeed its enactment of the new legislation evinces an intent to the contrary." *Id.* at 349-50 (quoting *City of Mesquite v. Alladin's Castle, Inc.*, 455 U.S. 283, 289 n. 11 (1982)). Accordingly, as Plaintiffs correctly acknowledge, given the enactment of the 2008 Amendment and implementing regulations, "there is no reasonable expectation that the alleged violation will recur." Pls.' Supp. Mem. at 3, n. 2.

Plaintiffs, however, do argue that the second prong of the test outlined above is not met in this case. *See id.* at 3. As indicated above, this second inquiry considers whether the "'interim relief or events have completely or irrevocably eradicated the effects of the alleged violation.'"

11

*Nat'l Black Police Ass'n*, 108 F.3d at 349 (quoting *Davis*, 440 U.S. at 631). In the context of a facial challenge to a statute, which seeks to have the statute "declared unconstitutional and enjoined," this prong is generally satisfied where — as a result of the enactment of the new legislation — the prior version of the statute is "no longer in force" and there is no allegation that the pre-amendment provisions "continue to have any residual effect." *Id.* at 350. *See also Kan. Judicial Review v. Stout*, 562 F.3d 1240, 1246 (10th Cir. 2009) ("Generally, repeal of a challenged statute causes a case to become moot because it extinguishes the plaintiff's legally cognizable interest in the outcome, rendering any remedial action by the court ineffectual."); *Khodara Evntl., Inc. v. Beckman*, 237 F.3d 186, 194 (3d Cir. 2001) ("Simply put, a declaration of unconstitutionality or injunction directed against the objectionable features of [an amended statute] would serve no purpose today."); *see also Citizens for Responsible Gov't State Political Action Comm. v. Davidson*, 236 F.3d 1174, 112 (10th Cir. 2000) ("The parties have no legally cognizable interest in the constitutional validity of an obsolete statute."); *Nat'l Adver. Co. v. The City and Co. of Denver*, 912 F.2d 405, 411 (10th Cir. 1990) ("A declaratory judgment on the validity of a repealed ordinance is a textbook example of advising what the law would be upon a hypothetical state of facts.") (internal quotation marks omitted); *In re Bunker Ltd. P'ship*, 820 F.2d 308, 311 (9th Cir. 1987) ("Where intervening legislation has settled a controversy involving only injunctive or declaratory relief, the controversy has become moot.").

In this case, the prior version of the Act — i.e., the version Plaintiffs allege is facially unconstitutional — is "no longer in force" and Plaintiffs have made no allegation that the pre-amendment provisions "continue to have any residual effect." *See Nat'l Black Police Ass'n*, 108 F.3d at 350. Indeed, Plaintiffs concede that the Act, as amended, now "provides due process to

12

future claimants," and they advance no argument that the newly amended Act is itself facially unconstitutional. *See* Pls.' Supp. Mem. at 1. Given this concession, it would seem clear that "declaratory and injunctive relief would no longer be appropriate." *Nat'l Black Police Ass'n*, 108 F.3d at 350. Indeed, Plaintiffs themselves "agree that their request for injunctive relief is moot." Pls.' Supp. Mem. at 2, n. 1. Nonetheless, Plaintiffs maintain that their request for declaratory relief, by contrast, has not been rendered moot by the enactment of the 2008 Amendment. *See id.* at 5. Specifically, Plaintiffs argue that an award of declaratory relief in their favor as to the unconstitutionality of the Act as previously written would entitle them to monetary damages. *See id.* ("Plaintiffs would be entitled to monetary damages based on their facial unconstitutionality claim, should the grant a declaratory judgment."). Accordingly, because the existence of a claim for monetary damages saves a claim from mootness, Plaintiffs conclude that their facial challenge to the Act remains viable insofar as they seek declaratory and monetary relief. For the reasons set forth below, the Court finds that this argument is wholly lacking in merit.

A.    *Declaratory Judgment*

First, with respect to Plaintiffs' claim for declaratory relief, the case law is clear that "a declaration of unconstitutionality . . . against the objectionable features of the [pre-amendment version of the Act] would serve no purpose today." *Khodara Envtl., Inc.*, 237 F.3d at 194. "'Where a law is amended so as to remove its challenged features, the claim . . . becomes moot as to those features.'" *Id.* (quoting *Naturist Soc., Inc. v. Fillyaw*, 958 F.2d 1515, 1520 (11th Cir. 1992)). In this case, a declaration that the now-obsolete provisions of the Act are facially unconstitutional would serve no purpose today. Plaintiffs themselves agree that the 2008 Amendment and its implementing regulations have remedied any alleged constitutional

13

deficiencies in the prior version. *See* Pls.' Supp. Mem. at 1 (agreeing that "the new Act provides due process to future claimants"). Given this concession, it is clear that "declaratory . . . relief would no longer be appropriate." *Nat'l Black Police Ass'n*, 108 F.3d at 350.

Plaintiffs' arguments to the contrary are without merit. As outlined above, Plaintiffs argue that their request for declaratory relief is not moot because a declaration that the Act, as previously written, is facially unconstitutional would then entitle Plaintiffs to monetary damages. *See* Pls.' Supp. Mem. at 5 ("Plaintiffs would be entitled to monetary damages based on their facial unconstitutionality claim, should the grant a declaratory judgment."). For the reasons set forth below, however, the Court finds that Plaintiffs do not state a viable claim for monetary damages based upon their facial challenge to a now-obsolete version of the Act. Accordingly, as Plaintiffs have offered no other argument in support of their position, s*ee generally id.* at 3-5, the Court finds that Plaintiffs' request for declaratory relief based on their facial challenge is now moot.

B.    *Monetary Damages*

Second, Plaintiffs argue that their facial constitutionality claim is not moot because Plaintiffs request monetary damages in connection with that claim. The Court disagrees. While "[a] case is saved from mootness if a ***viable*** claim for damages exists," *Khodara Envtl., Inc.*, 237 F.3d at 196 (emphasis added) (quoting *Nat'l Iranian Oil Co. v. Mapco Int'l, Inc.*, 983 F.2d 485, 489 (3d Cir.1992)), the claim for damages must be just that — a viable claim that is neither "insubstantial" or "clearly foreclosed by prior decisions." *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9 (1978); *see also Tanner Adver. Group, L.L.C. v. Fayette Co., Georgia*, 451 F.3d 777, 786 (11th Cir. 2006) ("A request for damages that is barred as a matter of law cannot

save a case from mootness."). In this case, Plaintiffs have not asserted a viable claim for monetary damages in connection with their facial challenge. As such, their facial challenge to the pre-amendment version of the Act is not saved from mootness.

As an initial matter, the Court notes that Plaintiffs have failed to proffer any case law in support of their position that they are entitled to monetary damages in connection with their facial challenge. Indeed, Plaintiffs have not cited a single case in which monetary damages were awarded in connection with a facial due process challenge to the constitutionality of a statute, let alone a statute that has since been repealed and/or amended. *See generally* Pls.' Supp. Mem. Plaintiffs' failure to identify any such case law is particularly telling given that Plaintiffs were specifically directed by the Court in its July 8, 2009 Order to "provide the Court with a legal basis for their assertion that they are entitled to monetary damages based upon their facial unconstitutionality claim." July 8, 2009 Order, Docket No. [70], at 3-4. Moreover, although this omission was noted by the District in its opposition briefing, *see* District's Opp'n at 5 (observing that "Plaintiffs have not presented any case (and the District has been unable to find any) where compensatory damages were awarded (or are available) based solely on the existence of an unconstitutional statute"), Plaintiffs chose not to file a reply or otherwise attempt to provide the Court with case law to the contrary. The present record is therefore devoid of any case law or other legal authority supporting Plaintiffs' assertion that they are entitled to damages in connection with their claim that the Act, as previously written, failed to provide sufficient due process.

The reason for this dearth of case law is clear: Plaintiffs cannot state a viable claim for monetary damages in connection with their facial challenge. Plaintiffs' arguments on this point

are based on a fundamental misunderstanding of the differences between their facial constitutionality challenge, which is the sole claim now at issue, and their as-applied challenge to the Act. As Plaintiffs themselves acknowledge in their Supplemental Memorandum, the individual Plaintiffs claim that they were injured by the allegedly "unlawful acts" taken by the Individual Defendants pursuant to the terms of the Act as previously written — i.e., that they "suffered actual damages when their pets were seized under the prior Act." Pls.' Supp. Mem. at 1, 8. In other words, Plaintiffs allege that they were damaged by the manner in which the prior version of the animal cruelty statute was *applied* to them. Plaintiffs have not, however, alleged — nor do they now argue — that they were damaged in any way by the *enactment* of the allegedly unconstitutional statute in this case. Accordingly, although in certain circumstances a plaintiff may arguably be injured by the mere enactment of a facially unconstitutional statute — for example, where a plaintiff alleges that enactment of a statute by itself has effected a taking of property or has violated the First Amendment — that is not the case at hand. Here, Plaintiffs' injuries, and hence their claims for damages, stem from the allegedly unconstitutional application of the Act in a manner that permitted their pets to be seized and detained without due process.

Plaintiffs' claim for compensatory damages in relation to their facial challenge therefore cannot succeed. In arguing that they are entitled to monetary damages in connection with their facial challenge to the Act, Plaintiffs principally rely upon 42 U.S.C. § 1983. *See* Pls.' Supp. Mem. at 5-6. Plaintiffs contend that if the Court were to declare the Act unconstitutional as previously written, the Court could then "order any 'necessary or proper relief' based on the declaratory judgment" pursuant to 28 U.S.C. § 2202 — including, in particular, damages pursuant to section 1983. *Id.* at 6. The "'the basic purpose' of § 1983 damages," however, "is

'to ***compensate persons for injuries*** that are caused by the deprivation of constitutional rights.'"

*Memphis Comm'ty Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986) (emphasis added by

Supreme Court in *Memphis*) (quoting *Carey v. Piphus*, 435 U.S. 247, 254 (1978)).  Accordingly,

even where a plaintiff alleges violations of his constitutional due process rights — rights which

are "central to our system of ordered liberty" — the Supreme Court has "nevertheless held that

***no*** compensatory damages [can] be awarded for violation of that right absent proof of actual

injury." *Id.* (citations omitted) (emphasis in original).  Thus, while Plaintiffs may be entitled to

compensatory damages in connection with their as-applied challenge to the constitutionality of

the Act, they are not entitled to compensatory damages in connection with their facial challenge.

Plaintiffs attempt to save their monetary damages claim by noting that "[a]bsent

demonstrable compensatory damages, when a court finds a constitutional violation in an action

seeking monetary relief under 42 U.S.C. § 1983, the court (or jury) must at least award nominal

damages."  Pls.' Supp. Mem. at 6, n. 4.  As an initial matter, this argument is asserted solely in a

single sentence in a footnote to Plaintiffs' Supplemental Memorandum, *see id.*, and the case law

is clear that courts "need not consider cursory arguments made only in a footnote."  *Hutchins v.

D.C.*, 188 F.3d 531, 539, n. 3 (D.C. Cir. 1999).  Regardless, even if the Court were to consider

this argument, it would not alter the Court's conclusion that Plaintiffs' facial challenge is now

moot.  Although it is true that "the denial of procedural due process [is] actionable for nominal

damages without proof of actual injury," *Carey*, 435 U.S. at 266, the Court emphasizes once

again that Plaintiffs have not alleged nor do they now argue that enactment of the Act, without

more, constituted a violation of Plaintiffs' constitutional due process rights.  Accordingly, while

a plaintiff may be entitled to nominal damages for a violation of his procedural due process

rights, even absent proof of an injury, a plaintiff is not entitled to nominal damages, even absent proof that his procedural due process rights were in fact violated.

Most importantly, Plaintiffs' Amended Complaint does not include a request for nominal damages — a point which Plaintiffs have not disputed. *See* Am. Compl. p. 30, ¶¶ 5 & 6 (seeking only "[i]ndividual and class damages, jointly and severally against all defendants" and "[p]unitive damages"). The D.C. Circuit has previously counseled that in such circumstances, it is "inappropriate" to "strain[] to find inferences that are not available on the face of the complaint" in order to permit an otherwise moot claim to go forward. *Davis v. D.C.*, 158 F.3d 1342, 1349 (D.C. Cir. 1998) (affirming district court's *sua sponte* dismissal of the plaintiff's complaint for damages despite the possibility that nominal damages could be awarded, because the complaint requested only statutorily unavailable compensatory and punitive damages, and lacked any specific request for nominal damages); *see also Matthews v. D.C.*, 675 F. Supp. 2d 180, 188 (D.D.C. 2009) ("Although an alleged denial of procedural due process should be actionable for nominal damages, the plaintiffs do not even request nominal damages in their complaint.") (internal quotation marks and citations omitted); *cf. Arizonans for Official English v. Arizona*, 520 U.S. 43, 71 (1997) ("It should have been clear . . . that a claim for nominal damages, extracted late in the day from [plaintiff]'s general prayer for relief and asserted solely to avoid otherwise certain mootness, bore close inspection.").[3]

---

[3] Plaintiffs also briefly allude to an award of attorney's fees in their supplemental briefing. *See* Pls.' Supp. Mem. at 7 (briefly referring to "attorney's fees" in a parenthetical citation). While the Individual Defendants have, in an abundance of caution, treated this fleeting reference as an affirmative argument by Plaintiffs that their request for attorney's fees and costs saves their facial challenge from mootness, *see* Ind. Defs.' Opp'n at 10-11, the Court does not understand Plaintiffs to have made any such argument. Rather, it is abundantly clear that Plaintiffs' argument is based solely on their assertion that their facial challenge remains extant in

The Court therefore finds that Plaintiffs' facial challenge to the Act has been rendered moot by the enactment of the 2008 Amendment, which Plaintiffs themselves agree has rectified any alleged due process violations in the Act. This finding, however, does not affect Plaintiffs' as-applied challenge to the constitutionality of the Act. As indicated above, that claim remains extant at this time. Accordingly, to the extent Plaintiffs can demonstrate that the prior Act, as applied, resulted in a violation of their constitutional right to due process and that they were injured as a result of that constitutional violation, Plaintiffs are arguably entitled to compensatory damages. The Court's conclusion that Plaintiffs' facial challenge is moot therefore does *not* eliminate Plaintiffs' ability to pursue their damages claim in connection with their as-applied challenge to the Act.

At first glance, then, it is unclear why Plaintiffs — having received the ultimate relief sought in connection with their facial challenge, i.e., a new statute that provides pet owners with due process — have not proceeded directly to litigate the merits of their as-applied challenge to the Act. The reason for this, however, is apparent upon review of the Plaintiffs' Supplemental Motion. As set forth therein, Plaintiffs appear to be under the misguided belief that a holding by this Court that the Act is unconstitutional as previously written would, in effect, serve as a litigation "short-cut." Plaintiffs urge that if this Court were to find that the Act as previously written is facially unconstitutional, "then it [i.e., the Act] is unconstitutional as to all plaintiffs,

---

light of their request for compensatory damages. *See id.* at 5-7; *cf. Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1001 (D.C. Cir. 2008) (*"*A fleeting statement in the parenthetical of a citation is no more sufficient to raise a claim than a cursory remark in a footnote, which we have consistently rejected."). Regardless, the Court notes that any such argument is foreclosed by D.C. Circuit precedent. *See Liu v. Immigration Naturalization Servs.*, 274 F.3d 533, 536 (D.C. Cir. 2001) (rejecting claim that request for "attorney's fees is sufficient to save the case from mootness").

and the litigation in this case will be substantially shortened, and can then focus on the remaining issues, such as damages." Pls.' Supp. Mem. at 7; *see also id.* at 2 ("In plaintiff's [*sic*] view, a determination that the prior Act is facially unconstitutional will resolve the central legal [issue] in this case, and allow the parties to then properly address the remaining issues in the case, including class certification, a discovery plan, and damages."). In other words, Plaintiffs contend that a finding in their favor as to the facial unconstitutionality of the Act would permit them to proceed directly to the damages stage, thereby avoiding litigation of their as-applied claim. Under this theory, Plaintiffs would be entitled to monetary damages for injuries caused by the enforcement of the Act without being required to first prove the merits of their as-applied claim, the litigation of which — unlike their facial challenge — would require the time and expense of discovery. *See id.* at 7 (noting that resolution of a facial challenge to the constitutionality of a statute does not typically require discovery). Such an argument is patently incorrect. To the extent Plaintiffs seek compensatory damages for individual injuries allegedly sustained by application of the Act, they must proceed with litigation of their as-applied challenges.

## IV.  CONCLUSION

For the reasons set forth above, the Court finds that Plaintiffs' facial challenge to the constitutionality of the Act is now MOOT. Accordingly, the Court shall DISMISS Count II of the Amended Complaint insofar as it asserts a facial challenge to the constitutionality of the Act. An appropriate Order accompanies this Memorandum Opinion.

Date: May 2, 2010.

*/s/*
**COLLEEN KOLLAR-KOTELLY**
United States District Judge
